ZELLA DUDLEY, by Next Friend, Respondent, v.
WABASH RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, March 1, 1913.

1. **NEGLIGENCE: Imputed Negligence: Parent and Child.** The
negligence of a father of a little girl, riding with him, in driv-
ing upon a railroad track in front of a train cannot be imputed
to her.

2. **RAILROADS: Failure to Give Crossing Signals: Proximate
Cause.** The requirement of Sec. 3140, R. S. 1909, with respect
to the giving of signals by a railroad train eighty rods from a
crossing, is for the purpose of warning persons approaching the
crossing of the presence of the train, and, therefore, if a per-
son knows of the presence of a train, the warning so required
would be without office and the failure to give it would not be
the proximate cause of an injury resulting from such person
being struck by the train.

3. ———: ———: ———. The negligence of the father of a little
girl, riding with him, in driving in front of a railroad train,
when he saw it in time to avoid it, cannot be said to be the
sole cause of her injury, so as to free the railroad company
from liability to her, as a joint tort-feasor, for not giving the
crossing signals required by Sec. 3140, R. S. 1909, where it
can be inferred that she might have saved herself from injury
if the signals had been given.

4. **NEGLIGENCE: Liability of Joint Tort-feasor: Parent and
Child.** A defendant is liable for injuries to a little girl, even
though its negligence concurred with the negligence of her
father in producing her injuries.

5. ———: **Liability of Joint Tort-feasor: Joint or Several Action.**
Joint tort-feasors may be required to respond, either jointly or
severally as plaintiff may elect, for an injury resulting from
their concurring negligence.

6. **EVIDENCE: Res Gestae.** While a declaration, in order to be a
part of the *res gestae*, need not in every case, be coincident,
in point of time, with the main fact to be proved, and while it
is enough that the two be so clearly connected that, in the
ordinary  course of affairs, the declaration can be said to be a
spontaneous exclamation of the real cause of the injury, yet
such declaration must reveal a spontaneity of expression, in
order to constitute it a verbal act, and if it is made even on
the very scene of the accident, but a very few minutes there

after, and purports to be a narrative of a past event, it is not to be regarded as a part of the *res gestae*.

7. ———: ———. In an action for injuries to a little girl, received in a collision between a wagon in which she was riding and a railroad train, plaintiff's father, who was driving the team, in response to a question propounded by a brakeman as to how the accident happened, several minutes after the collision and while he was still on the right of way, said that "the horse got frightened and he did not think the train was so close as it happened to be and he thought he could get across ahead of it." *Held,* that this statement was a narrative of a past occurrence and hence was not admissible as a part of the *res gestae.*

8. **DAMAGES: Personal Injuries: Excessive Verdict.** A verdict of $5000 for the breaking of an ankle and a leg of a fifteen-year-old girl, who also received a number of painful flesh wounds and a general nervous shock which may tend to impair her health during her whole life, is not excessive.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

(1) Although Dudley's negligence cannot be imputed to plaintiff (Becke v. Railway, 102 Mo. 544; Stotler v. Railroad, 200 Mo. 107), yet as Dudley saw the train the negligence of failure to sound the statutory crossing signals was immaterial negligence and the sole producing cause of the injury was Dudley's wilfulness in attempting to cross. Mockowik v. Railroad, 196 Mo. 570; Murray v. Transit Co., 176 Mo. 183; Heintz v. Transit Co., 115 Mo. App. 671; Fry v. Transit Co., 111 Mo. App. 335; McManamee v. Railroad, 135 Mo. 440; Hutchinson v. Railroad, 195 Mo. 546; Hutchinson v. Railroad, 161 Mo. 246; Moody v. Railroad, 68 Mo. 470. (2) The verdict is excessive. Neves v. Green, 111 Mo. App. 642; Connon v. Nevada, 188 Mo. 162; McCaffery v. Railroad, 192 Mo. 152; Brady v.

Railroad, 206 Mo. 540; Garard v. Coal & Coke Co., 207 Mo. 255; Burke v. Railroad, 120 Mo. App. 683; Evers v. Wiggins Ferry Co., 127 Mo. App. 244; Kirby v. Railroad, 146 Mo. App. 304.

E. S. *Gantt* and *Barclay, Fauntleroy & Cullen* for respondent.

(1) When the statutory signals are not given and a collision occurs at a crossing, it is presumed that this negligence caused it, and the burden is on the defendant to prove otherwise. Byars v. Railroad, 141 S. W. 926; McNulty v. Railroad, 203 Mo. 475. (2) The doctrine of imputable negligence does not obtain in this State, hence the negligence, if any, of the driver cannot be imputed to the occupant. Byars v. Railroad, 141 S. W. 926; Stotler v. Railroad, 200 Mo. 107; Sluder v. Transit Co., 189 Mo. 107; Profit v. Railroad, 91 Mo. App. 369; Marsh v. Railroad, 104 Mo. App. 577; Baxter v. Transit Co., 103 App. 597; Becke v. Railroad, 102 Mo. 544; Munger v. Sedalia, 66 Mo. App. 629; O'Rourke v. Railroad, 147 Mo. 352; Bailey v. Railroad, 152 Mo. 462; Johnson v. City of St. Joe, 96 Mo. App. 671; Keitel v. Cable Co., 28 Mo. App. 657; Duvall v. Railroad, 65 L. R. A. 722.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the negligence of defendant. Plaintiff recovered and defendant prosecutes the appeal. Plaintiff is a minor and prosecutes her suit by her father as her next friend duly appointed.

At the time of her injury, plaintiff was about fifteen years of age. She, in company with a younger sister and her father, was en route home from the town of Martinsburg in an open buggy when they were run upon by defendant's train at a public road crossing on its tracks. As a result of the collision, plaintiff's younger sister, Eunice Dudley, was killed, and she

(plaintiff) received painful and permanent injuries, to compensate which this suit is prosecuted. The negligence relied upon for a recovery pertains to the failure of defendant to ring the bell or sound the whistle attached to its locomotive engine on approaching the road crossing, in accordance with the statute in that behalf made and provided. The record is replete with evidence tending to sustain the charge of negligence thus laid. It appears plaintiff, in company with her little sister and father, had attended the Old Settlers' Picnic on that day and were traveling on the public road en route home about nine o'clock at night when she received her injuries. At the point of the crossing of the railroad and the public road involved here, the railroad tracks were depressed about five feet in a cut, and the public road approaching the crossing was, of course, depressed as well. Along the side of the railroad and adjacent to the public road, high weeds grew profusely and obstructed the view of those on the public road approaching the railroad crossing. The view of plaintiff's father thus being obstructed, he drove upon the railroad track immediately in front of the train, which, it is said, had omitted to sound the usual warnings of approach by means of bell or whistle. The material facts touching the right of recovery and the matter of defendant's negligence and that pertaining to the contributory negligence of plaintiff's father, who was driving the team, have all been reviewed by this court on a prior occasion, and it will be unnecessary to set them out in detail here. For the purpose of this appeal, it is sufficient to say, that there is nothing in the evidence tending to prove plaintiff guilty of negligence as a matter of law, for she was at most the guest of her father who drove upon the railroad track in front of the passing train. It appears that plaintiff looked and listened but did not observe the train before going upon the track, and defendant's

negligence in failing to give the crossing signals is
abundantly proven in the case.

The case of Dudley v. Wabash R. Co., 167 Mo.
App. 647, 150 S. W. 737, was a suit by plaintiff's
father in his own right, under the wrongful death stat-
ute, for the death of plaintiff's little sister, Eunice
Dudley, which resulted from the same collision.  Ref-
erence to that case is made for a more extensive state-
ment of the facts pertaining to this one, and, indeed,
many of the questions presented on this appeal are con-
cluded by the judgment of the court there.  It will be
unnecessary to consume time in further review of those
matters, and on this appeal consideration will be given
to those questions only which were not adjudicated in
that case.  In the former case we held, after a thorough
review of all the evidence, that both the matter of de-
fendant's negligence and that of the contributory neg-
ligence of plaintiff's father, which was more important
on the right of recovery there than here, were ques-
tions for the jury.  If plaintiff's father, when suing in
his own right for the death of his daughter, Eunice,
was not to be denied a recovery as a matter of law on
the ground  of contributory negligence in driving in
front of the approaching train, it is obvious the right
of recovery of this plaintiff should not be denied on
that score, for his negligence may not be imputed to
her in the circumstances of the case, as she was a little
girl in his care, or his guest in the carriage as it were,
and there is nothing whatever to suggest active negli-
gence on her part.  [Stotler v. Chicago & A. R. Co.,
200 Mo. 107, 144, 145, 146, 147, 98 S. W. 509.]

Though by no means conclusive, there is some evi-
dence tending to show plaintiff's father saw the light
of the train and knew of its approach before driving
upon the crossing and that he said he thought he could
"make it across" in safety.  No one can doubt that the
requirements of the statute with respect to the sound-
ing of signals by bell and whistle are for the purpose

of warning those approaching the crossing, and, there-
fore, if one on the public road actually sees the train
and knows of its presence, the warning so required is
without an office to perform.  In such circumstances,
no recovery is to be allowed for the mere omission to
sound the crossing signals when the injured person
saw the train and knew of its approach in ample time
to avoid the collision, for the very good reason that
the omission to sound the alarm is in no sense the in-
ducing or proximate cause of the injury.  In this view,
defendant requested the court to instruct the jury that
if plaintiff's father actually saw the train or the head-
light of the engine and knew of its approach and, not-
withstanding, attempted to cross the track in front of
the same and thus occasioned the collision, then
plaintiff is not entitled to recover.  This proposition is
incorporated in different form in two separate in-
structions requested by defendant and refused by the
court.  It is argued the court erred in refusing to so
charge the jury, for it is said if plaintiff's father saw
and knew of the approach of the train in ample time
to have avoided the collision, the failure to sound the
crossing signal was remote in the chain of causation,
and the negligence of the father alone is the proximate
cause of plaintiff's injury, for he had charge of the
team and drove upon the track immediately in front of
the approaching locomotive.  The argument concedes
that the negligence of plaintiff's father is not to be
imputed to her as a matter of law, but asserts that,
as plaintiff derives her cause of action through the
omission of defendant to give warning of the approach
of the train, then she is not entitled to recover if the
jury should find that her father saw the train and knew
of its presence in time to avert the injury.  It is urged
that if plaintiff's father saw the train and, notwith-
standing, drove upon the crossing, then his negligence
is the sole cause of plaintiff's injury and no liability

obtains against defendant for his negligent act. We must reject this argument as unsound in the circumstances of the case, for it omits to reckon with the separate liabilities which attend the acts of individual joint tort-feasors, and omits to reckon, too, with the obligation imposed on defendant by the statute to warn plaintiff of the approach of the train as well as to warn her father, who was driving the team. Such an argument would inhere with much force and be persuasive, indeed, if not conclusive, in the suit of the father, but not so where the injured daughter is asserting her right of recovery, for the defendant may be required to respond for her injury though both her father, who drove the team, and defendant were negligent in the premises, and even though the negligence of both concurred in entailing the injury upon her, provided she was duly careful herself, and it is found that she was. No one can doubt that joint tort-feasors may be required to respond either jointly or separately, as the plaintiff may elect, for an injury which results from the concurring negligence of two or more wrongdoers. [Miller v. United Rys. Co., 155 Mo. App. 528, 134 S. W. 1045.] This being true, if the plaintiff was in the exercise of ordinary care on her own part, as the jury found she was, she is entitled to recover from the defendant for injuries received as a result of its omission to sound the bell or blow the whistle, even though her father knew of the approach of the train and negligently approached it, unless the jury should find that she, too, knew of the approach of the train in time to have avoided the collision and the instructions requested do not incorporate the latter proposition. They hypothesize alone the question of the father's knowledge of the approaching train, and it is conceded in the argument his negligence is not to be imputed to her. To elucidate, touching this matter it may be said that had defendant sounded the crossing signals in compliance with the statute, likely plaintiff would have

received warning in time to have saved herself from injury though the father drove forward upon the crossing as he did—that is to say, she might have jumped out of the buggy or, indeed, have prevented her father from driving upon the crossing; so it cannot be said as a matter of law that the father's negligence is the sole cause of the injury even if he did see the train approaching, for the statute imposed the obligation on defendant to warn plaintiff of the approach of the train as well as to warn her father. In this view, it is reasonably probable that defendant's negligence in omitting to warn plaintiff (for as to this we put aside the father's knowledge of the situation, which may not be imputed to her) concurred with the negligence of plaintiff's father as the proximate cause of her injury. Such being true, the matter was for the jury, as reasonable probabilities on the evidence always are, and the court very properly refused the instructions as requested, for they hypothesized alone the father's knowledge of the approaching train, and it is obvious this may not be imputed to plaintiff. Though the father was negligent his fault may not have been the sole cause of plaintiff's injury.

As a result of the collision, plaintiff's little sister, Eunice, about twelve years old, was killed, the plaintiff herself was precipitated a considerable distance on the railroad right of way and severely and permanently injured and her father was thrown into the weeds by the roadside. It is said that the train was running from forty to forty-five miles an hour. A brakeman, Hopson, was riding on the engine. The train slowed down and stopped as soon as possible. Hopson alighted from the engine and ran back to where plaintiff's father was by the side of the railroad. Hopson, the brakeman, testified that at the time he found plaintiff's father over on the right of way, "it seemed to be like he was just raising up." Defendant's counsel then sought to prove by the witness Hopson that he

asked Dudley, plaintiff's father, how it happened, and Dudley said that "the horses got frightened and he did not think the train was so close as it turned out to be and he thought he could get across ahead of it." The court declined this offer of proof, and it is argued here this was error, for it is said the statement so made by plaintiff's father at the time within a few minutes after the fact of the collision and in the full view of the calamitous results was of the *res gestae.* While the declaration to be a part of the *res gestae* need not be coincident in point of time with the main fact to be proved, in every case, and while it is enough that the two shall be so clearly connected that the declaration can, in the ordinary course of affairs, be said to be the spontaneous exclamation of the real cause of the injury, it is certain that the exclamation must reveal a spontaneity of expression, in order to characterize it as a verbal act. The spontaneity of expression immediately upon or after the happening of the event and in the very midst of the surroundings is the element which imparts the characteristics of a verbal act performed at the time and thus renders the expression of the *res gestae.* [See Leahey v. Cass Avenue, etc., Ry. Co., 97 Mo. 165, 10 S. W. 58; Senn v. Southern Ry. Co., 108 Mo. 142, 18 S. W. 1007.] However, if the statements sought to be introduced are made even on the very scene of the accident, but a few minutes thereafter, and purport to be a narrative of a past event, they are not to be regarded as of the *res gestae,* but rather as mere hearsay. For a case very much in point here, see Adams v. Hannibal & St. Joseph R. Co., 74 Mo. 553; see, also, Koenig v. Union Depot Ry. Co., 173 Mo. 698, 73 S. W. 637; Redmon v. Met. St. R. Co., 185 Mo. 1, 11, 84 S. W. 26. It is clear the statement sought to be introduced here as of the *res gestae* was but a mere narrative made several minutes after the collision, for the train slowed down from forty to forty-five miles an hour and stopped in the meantime and

the brakeman had run back to where he found plaintiff's father who "seemed to be like he was just raising up" and propounded the inquiry as to how it happened. There seems to be no such spontaneity about the declaration as could impart the characteristics of a verbal act performed at the time so as to render it a part of the main fact of the collision, but rather it was a narrative of the occurrence which the brakeman sought to elicit.

The jury awarded plaintiff a recovery in the amount of $5000 and it is urged this is excessive, but we are not so persuaded. It appears plaintiff's ankle was broken and one of the bones of her leg was broken, too; besides this she received a number of painful flesh wounds and a general nervous shock which may tend to impair her health during her whole life. The injuries are both permanent and painful and as to what damage may be entailed upon a young girl of her age, when her future together with the prospects of matrimony, etc., are considered, no one can tell. We are not inclined to disturb the verdict.

Other questions are raised but they have all been sufficiently considered in the companion case of Dudley v. Wabash, supra, heretofore decided, and it is unnecessary to consider them again here. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.