GRACYA PAEPKE, RESPONDENT, v. JAMES R. STADELMAN, APPELLANT.*

Kansas City Court of Appeals.   December 5, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2754, p. 798, n. 23; Damages, 17CJ, section 408, p. 1091, n. 85; Evidence, 22CJ, section 159, p. 193, n. 86; section 761, p. 670, n. 10; Motor Vehicles, 42CJ, section 1017, p. 1222, n. 1; Trial, 38Cyc, p. 1475, n. 18; p. 1479, n. 73; Witnesses, 40Cyc, p. 2654, n. 99.

*Barney E. Reilly* and *Miles Elliott* for respondent.

*Landis & Duncan* for appellant.

FRANK, C.—This is an action to recover damages for personal injuries alleged to have been sustained by plaintiff as a result of a collision between a Ford Coupe driven by plaintiff and a Paige Touring Car belonging to defendant, James R. Stadelman, but driven at the time in question by defendant, James H. Paddock, as agent and servant of defendant Stadelman. The collision occurred on August 22, 1926, at the intersection of 3rd street and Hyde Park avenue in the city of St. Joseph. At the close of the evidence plaintiff dismissed as to defendant, James H. Paddock. The verdict and judgment was for plaintiff and against defendant, Stadelman. After the usual preliminary steps, defendant appealed.

No complaint is lodged against the petition and no claim is made that the evidence is insufficient to prove the negligence alleged therein. On the record thus made, it is only necessary to state such facts as are pertinent to a disposition of the points raised.

The first, second and third assignments of error relate to the same subject and may be considered together. Such assignments are, (1) that the court erred in admitting evidence to the effect that defendant, Stadelman, had indemnity insurance; (2) the court erred in refusing to strike out such testimony; and (3) that the court erred

in refusing to discharge the jury on account of errors alleged under assignments 1 and 2, supra.

Upon direct examination of plaintiff's husband, who testified on behalf of plaintiff, the following occurred:

"My name is John A. Paepke. I am a city fireman living at 104½ East Valley street. My wife's name is Gracya. I do not know the gentleman sitting over there, but had a conversation with Mr. Stadelman shortly after my wife was injured, at his office on the third floor of the Corby-Forsee Building.

"Q. I wish you would tell this jury what, if anything, you said to Mr. Stadelman and what he said to you in response to what you said to him. A. I went up to see him, told him about the accident and he told me Mr. Paddock there was driving his car and that—

"MR. DUNCAN: We object to that as not binding on Mr. Paddock.

"THE COURT: It is competent for the other party.

"Q. What did he say Mr. Paddock was doing? A. He said Mr. Paddock was driving some of his friends on business--something like that.

"MR. DUNCAN: We move to strike out the answer.

"THE COURT: I think it is competent. Objection overruled.

"To which ruling of the court defendants at the time excepted.

"Q. You say he told you Mr. Paddock was driving his car on the date of the accident on some business for Mr. Stadelman? A. Yes.

"Q. This took place in his office in the Corby Building? A. Yes.

"Q. What other conversation if any, did you have with him? A. I asked him what he was going to do about it—

"MR. DUNCAN: We object to any testimony involving any effort to adjust the matter.

"THE COURT: There has been no evidence in regard to an adjustment. This is not directed to that.

"MR. REILLY: No, no—just asking the conversation he had with Mr. Stadelman and what he said concerning the accident.

"THE COURT: Proceed.

"THE WITNESS: Well, he said I would have to go to see the insurance company.

"MR. DUNCAN: We move to strike out that answer. We object to it. We further move that the jury be discharged from further consideration of this case.

"THE COURT: I think the evidence is competent as tending to show the ownership of the car, if the ownership is admitted—

"MR. DUNCAN: It is admitted Stadelman owns the car—was admitted in the opening statement. I later said I wouldn't make it again.

"THE COURT: It was left in such shape it was doubtful.

"MR. DUNCAN: We object for the further reason that there was nothing in the answer of the witness that pertained to the ownership of the car.

"THE COURT: The court will not sustain the objection but we will go no further into that.

"To which ruling of the court defendants at the time excepted."

"MR. DUNCAN: We renew our motion for the discharge of the jury.

"THE COURT: The motion is denied.

To which ruling of the court defendants at the time excepted.

The question presented is whether or not this evidence is relevant and competent for any purpose. If so, its admission was proper even though it tended to show that defendant had liability insurance.

Defendant's ownership of the car was one of the elements of plaintiff's case. The answer denies such ownership, therefore any evidence tending to show that defendant owned the car at the time in question was admissible. The fact that defendant had indemnity insurance is a circumstance tending to show that he owned the car and was admissible on that issue. After this evidence was admitted, defendant's counsel stated: "It is admitted Stadelman owns the car—was admitted in the opening statement. I later said, I would not make it again."

The Court then said: "It was left in such shape it was doubtful."

On this record we think the court was justified in holding that it was doubtful whether or not the ownership of the car had been admitted.

The law is well settled that competent evidence may not be excluded when offered on the ground that such evidence would tend to prejudice the jury against one of the parties. [Jablonowski v. Modern Cap Co., 279 S. W. 89, 97.]

Defendant called as a witness, one C. C. McKinley, whose testimony seemed to surprise defendant's counsel. For the purpose of showing such surprise one of defendant's attorneys, John C. Landis, III, was called as a witness by the defendant and testified to statements made to him by witness, McKinley, directly contradictory to the testimony given by him on the witness stand. On the cross-examination of witness Landis the following occurred:

"Q. Whom do you represent? What is your interest in this case? A. Frankly, I don't know. I am with Landis and Duncan.

"Q. Mr. Stadelman is not paying you any fee? A. No, sir.

"Q. Who is paying the fee, or what is your interest? A. I am on a salary in the office of Landis and Duncan.

"Q. Who is paying your father and Duncan? A. I haven't any idea.

"Q. You haven't any idea? A. None at all. I haven't been told.

"Q. And without being told you haven't any idea who is paying any fee to your father and Mr. Duncan in this case? A. I could make a guess.

"Q. Well, what is it?

"Mr. LANDIS: We object to that.

"THE COURT: The objection is sustained."

"Q. Is there anybody interested in this case with your firm or that your firm represents and that you work for and your father works for from month to month?

"Mr. LANDIS: We object to that.

"THE COURT: The objection is sustained.

Appellant's contention is that counsel's purpose in cross-examining the witness, Landis, in the manner above indicated was to show that either he or his firm was in the employ of the insurance company thereby directing the attention of the jury to the fact that the real defendant was not Stadelman but was an unknown insurance company.

Witness Landis saw fit to take the witness stand as a witness for defendant and after having done so, plaintiff had the right to show by his cross-examination any fact or circumstance that would tend to show his interest or bias respecting the issues on trial.

The language of the Supreme Court in the case of Snyder v. Wagner Electric Manufacturing Co., 223 S. W. 911, on a situation similar to that presented by the record in this case is, we think, decisive of the point here presented. In that case the court said:

"It is not suggested, either by brief or in oral argument of counsel, that a casualty insurance company is not taking the burden of the defense of this case, as it has the perfect right to do. It has not only the right, but the obligation often rests upon it, to protect its stockholders against wrongful claims in all legitimate ways, and the defense of suits not founded in honest liability is one of those ways; but in the trial of such cases upon the merits the jury is entitled to know everything that affects the credibility of witnesses and the weight to be given their testimony, including their interest not only in the subject-matter, but in the parties who are to profit or lose by the verdict. This goes not only to contractual relations with reference to the subject-matter of their testimony, but to their friendships and enmities. . . .

"When Mr. Bowser testified, plaintiff had the right to ask him if he was not an employee of the defendant, and for the same reason and for the same purpose had the right to ask him if he was not there for the insurance company which produced him. For the same reason plaintiff had the right to ask Dr. Schreck if he was not the paid agent

of the insurance company with respect to the subject of his testimony. The case as it is presented in this record could not have been honestly placed before the jury without the disclosure of the relation which these witnesses sustained to the company.''

In Jablonowski v. Modern Cap Mfg. Co., 279 S. W. 89, 97, the Supreme Court, after quoting approvingly from the Snyder case, supra, says,

''In other words, the interest or bias of a witness with respect to the issues on trial, his relation to the parties, and the state of his feelings toward them, are never irrelevant or collateral matters. [State v. Mulhall, 199 Mo. 202, 212, 97 S. W. 583, 7 L. R. A. (N. S.) 630, 8 Ann. Cas. 781; 28 R. C. L. 614, 615.]''

We understand the rule in this State to be that when in the trial of a suit to recover damages for personal injuries, evidence that defendant had indemnity insurance is offered by plaintiff, the admissibility of such evidence is controlled by the same rule that governs the admissibility of any other evidence offered in the case. The thing that determines the admissibility of such evidence is whether or not it tends to prove any issue in the case or is relevant or material for any purpose. If so, it cannot be excluded on the ground that it may tend to prejudice the defendant or because it tends to show that he had indemnity insurance. [Jablonowski v. Modern Cap Mfg. Co., 279 S. W. 89, 97; Garvey v. Ladd, 226 S. W. 727, 733; Carlson v. Auto Transit Co., 282 S. W. 1037, 1041, 1042.]

It is stated in many cases in this State, that in the absence of a showing of good faith in so doing, it is error for plaintiff to inject into the trial of a lawsuit, the fact that the defendant in such suit carried liability insurance. If the evidence of such fact was relevant and material, plaintiff could not be convicted of bad faith in offering it.

The evidence offered by plaintiff, in the instant case, tending to show that defendant had indemnity insurance being relevant and material for the purpose heretofore stated, plaintiff was not guilty of bad faith in offering it, and no error was committed by the court in admitting it.

Defendant cites many cases in support of his contention that the admission of such evidence was prejudicial and constitutes reversible error. We have carefully examined these cases and find that they are not controlling here because evidence relative to indemnity insurance which was there admitted over the objection of defendants was not relevant or material for any purpose, while in the instant case, appellant having denied in his answer that he owned, and his agent was at the time operating, the car which caused plaintiff's injuries, evidence that he said, when asked by plaintiff's husband, what he was going to do about it, ''You will have to go see my insurance com-

pany," was admissible as a circumstance tending to show that he owned the car and that it was operated at the time in question by his agent.

Assignments 4 and 5 both relate to the testimony of Dr. Swint and may be considered together. They are: (4) that the court erred in admitting testimony of Dr. Swint based upon what he was told by plaintiff as well as what he found by his examination; (5) that the court erred in refusing to strike out such testimony.

Dr. Swint gave the following testimony on direct examination:

"That he first saw plaintiff at her home on August 27, 1926; that she was suffering from bruises to the right shoulder, small of the back, cut behind the left ear; that she was in bed; that he examined her body and found bruises and discolorations over her shoulder, her hip and her limb between the knee and the body; that he found adhesive tape over two tender ribs 10th and 11th very tender; that he saw her about two or three weeks thereafter; that at this time all objective symptoms had passed away but she was still suffering from tenderness over these parts; that she was very nervous every time he saw her; that he last saw her on the 18th of January; that she was still nervous and the tenderness of the ribs was still present."

On cross-examination of Dr. Swint the following occurred:

"Q. How long after Mrs. Paepke was in this accident before you saw her? A. I saw her on the 27th of August. Dr. Robertson was present when I saw her. I don't know who called me. I did not take Mrs. Paepke's temperature. She was in bed. I saw discolorations on her back. She had bruises on her hip, right shoulder, right hip, discolorations along lower border of the ribs, well back towards the back bone. About the tip of the bone, the ilium. I did not do anything for her. I was not supposed to. I was there in consultation. Mr. Paepke called me again about three weeks after that. She was lying down then, so I could examine her. I found no bruises. No ribs were broken. They were torn loose, not broken. I can't say they had grown back. They were still sore.

"Q. A torn or broken rib is not such an injury as ordinarily results in permanent injury, is it? A. Well, that is a question as to whether the intercostal nerve is involved in the fracture.

"Q. Suppose it should be injured. What would the effect be? A. She would have pain there always.

"Q. That is not the usual and ordinary result of an injury of that kind? A. It is pretty hard to break a rib without injuring the nerve some way, but this rib was not broken.

"Q. It is difficult to injure the intercostal nerve without breaking the rib? A. You can injure it by breaking it loose—it is between..

"Q. Do you know whether it was injured in this case? A. It was broken loose. The attachment between the tenth and eleventh

ribs and the ninth rib was broken. There were no objective symptoms the second time I saw her. I never prescribed any medicine for her. I have seen her four times, twice at the office and twice at home.

"Q. When she came to your office did she have any visible evidence of injury? A. Not any more than when I saw her the second time. She appeared very nervous . . .

"Q. All you know about the tenderness you have described is what she told you? A. The last time?

"Q. Yes. A. Yes.

"MR. DUNCAN: We move to strike out all of the testimony of this witness as to tenderness about the ribs the last time he examined her —his testimony that he found tenderness over her ribs.

"THE COURT: The motion is denied.

"To which ruling of the court defendants at the time excepted.

. . .

"Q. Your testimony as to what you found is based on what Mrs. Paepke told you, and what you found, together? A. What I found and what she told me—Yes, sir.

"MR. DUNCAN: We move to strike out his entire testimony.

"THE COURT: The question he asked you, your testimony in answer to which he now moves to strike out, concerning what you discovered on your last visit, this tenderness, as you say, about the ribs, was that testified to by you from what you found on examination of the plaintiff?

"THE WITNESS: I examined her ribs; all the evidence, so far as sensation and appearance of the woman are concerned, indicated to me that it was painful.

"THE COURT: The objection is overruled and the motion to strike out denied.

"To which ruling of the court defendant at the time excepted.

"Q. What examination did you make as a physician and surgeon to discover this tenderness? A. By manipulations of my fingers.

"Q. Is that the way you found it? A. That is the way I found it.

"Q. And the only way you knew there was tenderness was that she flinched or appeared sensitive? A. Appeared sensitive.

"Q. Any other person could do the same thing? A. I expect thy could.

"Q. But you found injuries there you stated on the witness stand? A. I saw the injuries; the objective symptoms were present.

"Q. Each time that you examined Mrs. Paepke the condition you have testified to here and the information you got was gained from what you saw and from what she told you about it and the other doctor? A. No, the information I got was from the objective symptoms being visible, and my experience I think has taught me to know whether a person is sore or not.

354

"Q. You didn't rely upon what she told you? A. Not altogether upon what she or anybody else said.

"Q. Did you rely partly on what she told you? A. I did some but I think I would have known if she faked.

"MR. DUNCAN: We renew our motion to strike out the testimony of this witness.

"THE COURT: The motion is overruled."

The testimony of Dr. Swint above set out clearly shows that his opinion as to plaintiff's condition was based on his own examination of her and what she told him relative to tenderness in her side at the time he was examining her. The evidence does not show that plaintiff made any statement to Dr. Swint as to her past physical condition. The rule governing the admissibility of this evidence is well stated in Brady v. Traction Co., 140 Mo. App. 421, 428, 124 S. W. 1070:

"The rule is that a physician, in describing the result of an examination of a patient, may given statements of the patient made to him in the course of the examination which relate to the condition of the patient at the time and which give the physician information proper for him to have in determining the condition of the patient, but statements made by the patient which relate to her past condition or to the circumstances surrounding the injury or the manner in which she received it, are not admissible."

To the same effect: Poumeroule v. Cable Co., 167 Mo. App. 533, 539, 152 S. W. 114; Freeman v. Insuranc Co., 196 Mo. App. 383, 390, 195 S. W. 545; Murphy v. Power Co., 283 S. W. 994, 996.

We recognize the doctrine announced in the cases cited by appellant to the effect that a physician may not testify as to statements made to him relative to the past physical condition of his patient then base an opinion thereon. Such rule has no application in the instant case because the record shows that Dr. Swint's testimony was not based on statements made to him relative to the past condition of plaintiff.

The sixth and last assignment of error is that the verdit is excessive and the result of passion and prejudice due to the fact that the jury was informed that defendant had indemnity insurance.

The evidence touching plaintiff's injuries may be summarized as follows:

Plaintiff testified that she had a cut on the left side and a bruise on the right side of her head; that her ribs were torn loose; that her right limb was bruised all the way down; that her right arm was bruised and pained her every since up in the shoulder; that she was in bed two weeks all of the time after the accident; that she has had a headache and earache ever since the accident; that before the accident she was not nervous but has been since then; that since the

accident she has had trouble with her back and bowels; that she is compelled to get up frequently at night, that she never had that trouble before the accident.

Dr. Robertson testified that when he first saw plaintiff she was in a temporary unconscious condition; that she complained of a pain in her back and side and considerable pain in breathing; that she had a cut an inch long over the left ear; that he made six or seven trips to see plaintiff and she had been at his office various times since then; that he thought there was severe strain in the right side, possibly a tear of the ligaments where they attach to the spinal bones; that the tearing loose of the ligaments was where the ribs joined the spine; that she has been more nervous since the accident than she was at the time; that her injuries might become permanent or be permanent; that he discovered pain and soreness in the right ribs; that he could not say whether the injury to her right rib is permanent or temporary.

The verdict in this case was for $1000. The trial court did not discover anything indicating that the verdict was the result of passion or prejudice and refused to disturb it. We must indulge the presumption that the trial court soundly exercised its discretion in so doing. The evidence touching plaintiff's injuries does not convince us that the verdict is excessive.

The judgment of the trial court should be and is affirmed. *Williams, C.*, concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.*, absent.