HELENE WHITMAN v. WILLIAM CARVER, Appellant.—88 S. W. (2d) 885.

Division One, December 18, 1935.

*Taylor, Chasnoff & Willson* and *James V. Frank* for appellant.

*Eagleton, Waechter, Yost, Elam & Clark* for respondent.

BRADLEY, C.—Action for personal injury. Verdict and judgment went for plaintiff for $17,995.85, and defendant, unsuccessful in motion for new trial, appealed.

Petition was filed against Scharff-Koken Mfg. Company, defendant Carver and Walter Felter. Carver was employed by defendant company. At the close of plaintiff's case she dismissed as to Scharff-Koken Mfg. Company, and the verdict of the jury was in favor of defendant Felter. Plaintiff was injured about four-thirty A. M., March 8, 1931, while riding in an automobile as a guest of defendant Carver. Plaintiff resided with her parents at the Coronada Hotel, St. Louis, and she and others, including defendant Carver and his wife, had spent the evening at the hotel and about two-thirty A. M., March 8th, the party, consisting of six in number, went to the Avalon Club, which is west of the Coronada Hotel. Plaintiff and her escort, by invitation, went from the hotel to the club with defendant Carver and his wife in an automobile driven by defendant Carver, but owned by his employer, Scharff-Koken Mfg. Company. The party left the club somewhere around four-thirty A. M., and while defendant Carver was returning plaintiff and her escort back to the Coronada Hotel, a collision occurred between the automobile driven by defendant

Carver and an automobile driven by defendant Felter, which collision resulted in serious injury to plaintiff.

In view of the assignments of error it is not necessary to consider the pleadings, nor is it necessary to consider the evidence at length. Defendant makes ten separate assignments, but these may be grouped as follows: (1) That the court erred in admitting evidence concerning insurance and in failing to discharge the jury upon request; (2) that error was committed by the refusal of defendant's Instruction A; and (3) on argument of counsel for plaintiff.

While plaintiff was on the stand, and on direct examination, the following occurred: By MR. EAGLETON: "Q. Did Mr. Carver ever call to see you in the hospital? A. Yes, sir. Q. How many times did he come? A. Two or three times. Q. Did you have any conversation with him at any time about this accident? A. I did. Q. What did he say to you about it? A. Told me he was sorry that it happened; that he felt he should have heeded my warning that night, and not to worry about the expenses, my expenses; that he was fully covered by insurance and would see that I was taken care of." Upon plaintiff stating what defendant, according to her version, said to her about insurance, defendant's counsel asked that the jury be discharged, stating that such evidence was highly prejudicial. As we understand the record, the request to discharge was made out of the hearing of the jury. A colloquy occurred between counsel and the court, which as we understand, was also not within the hearing of the jury. In this colloquy the court remarked that "he (counsel for plaintiff) has a right to inquire. It is an admission against interest as to what was said." The court did not rule at once, but deferred the matter till "the lunch hour." Later, the court, addressing Mr. Frank, counsel for defendant, said: "On that objection this morning and motion for the discharge of the jury, I am overruling it." Exception was saved. While defendant Carver was on the stand on direct examination, the following occurred: By MR. FRANK: "Q. Did you and Mrs. Carver go out to the hospital to see Mrs. Whitman after this happened? A. Yes, sir; we did. Q. Several times? A. Several times. Q. You heard her testify this morning, did you not, that she had a conversation with you at the hospital, in which you told her not to worry, that you would take care of her medical expenses? Did you hear that testimony this morning? A. Yes, sir; I did. Q. Did you make that statement to her? A. No, sir; I did not. I am in no position to take care of her medical expenses. MR. EAGLETON: I object to the last part, if the Court please, because he isn't presenting the whole statement. MR. FRANK: I was going to split it up in two questions; is that all right? MR. EAGLETON: All right; get it all in. MR. FRANK: I want to get it all in. Q. You heard Mrs. Whitman testify this morning that on one of the occasions you were out there

at the hospital to see her that you made the remark to her that she didn't need to worry; that you would take care of her medical expenses because you had insurance and you were fully protected; did you make that statement to her? A. No, sir; I did not. Q. Did you say anything to her about insurance? A. I said that I didn't think I was covered under the circumstances; that I was not on company business. Q. Did you tell her that you had any insurance? A. No, sir; I did not. Q. Have you got any insurance? A. No, sir; just the company policy. Q. Are you covered under the company policy? MR. EAGLETON: I object to that. The policy would be the best evidence. Ask him to bring in the policy. You can tell how much is covered. I would like to have an order on him to bring in the policy. MR. FRANK: You brough this into this case. MR. EAGLETON: Yes, and I would like to have the policy so that I would know what is covered here. MR. FRANK: You brought this into the case yourself. And I asked him a question. She has made the statement. MR. EAGLETON: He said he did not. MR. FRANK: He said the reason he didn't make it is that he didn't have insurance. MR. EAGLETON: I say the reason he did make it is that he did have insurance, and ask that the policy be brought in court here."

Then on cross-examination of defendant, the following: By MR. EAGLETON: "Q. Where is the policy of insurance? Do you know? A. That I don't know, or even if there is any. Q. How did you determine there is insurance? A. I haven't determined it. Q. You haven't determined it? A. I don't know whether they have any insurance under the circumstances. Q. You mean to say notwithstanding the fact that you are sued and Mr. Frank is acting for you as attorney and for Scharff-Koken Company, that you haven't determined whether you are insured or not? A. No, sir; I have never seen the policy. Q. Have they shown you any policy? A. No, sir. Q. Have you talked to anyone about it? A. Mr. Newell, our vice president; Mr. Scharff, our president and Mr. Frank. Q. And they didn't show you any policy? A. No, sir. MR. FRANK: Ask him what we talked about. MR. EAGLETON: I don't have to ask what you did. Q. So you don't know whether you have insurance? A. No, sir. Q. But he is the attorney here acting for the company issuing the same? A. Yes, sir."

Defendant's refused Instruction A is as follows: "The Court instructs the jury that in determining the issues in this case you shall disregard all remarks of counsel and witnesses regarding insurance, as that has nothing to do with the issues in the case."

In argument to the jury by counsel for plaintiff, the record shows the following: "MR. EAGLETON: And I do say it was said because he had insurance—MR. FRANK: If the court please, I object to that form of argument. Mr. Carver has testified positively on the stand that he is not covered and protected by insurance. MR. EAGLETON:

There is contrary testimony, also. MR. FRANK: I move that the jury be instructed to disregard that highly prejudicial remark. THE COURT: The jury will remember what the testimony was. MR. FRANK: I move, your Honor, that they be instructed to disregard that remark of counsel. THE COURT: The objection will be overruled. Proceed. To which ruling of the court defendant . . . excepted. MR. EAGLETON: You return the kind of verdict that this girl ought to have, under his Honor's instructions and the evidence, and leave the collection of it to me. MR. FRANK: If the Court please, I object to that argument. That is highly prejudicial. I move the jury be instructed to disregard it. THE COURT: Proceed with the argument. MR. FRANK: Note my exception.''

It will be noted that defendant's counsel, when defendant was on the stand, went into the subject of insurance and that defendant denied having made the statement to plaintiff as claimed by her. Also, it appears that on cross-examination of defendant the subject of insurance was again gone over and without objection, and counsel for plaintiff in their written argument say: ''The question, therefore, of whether or not the defendant had insurance was gone into at great length by both counsel without the slightest objection from either side. It is apparent that the defendant not only invited the issue, but welcomed the same, hoping thereby to convince the jury of the untruthfulness of plaintiff's statement, and, at the same time, to create a strong sense of sympathy for him. The mere fact that the defendant was unsuccessful in his attempt should be no reason why the defendant should now be permitted to argue that the whole subject of insurance was not for the consideration of the jury. It necessarily became, and was, a very vital part of the case affecting the credibility of either the plaintiff or the defendant. It was proper for the jury's consideration in their effort to determine who was telling the truth about the many facts disputed between the plaintiff and the defendant.'' Also, it is contended that plaintiff was entitled to prove that the defendant had insurance on the theory that such evidence would tend to show defendant's liability.

We cannot agree with learned counsel for plaintiff. The subject of insurance did not arise in such manner as to be competent to affect credibility. Plaintiff would be only interested in affecting adversely the credibility of defendant, and certainly she could not properly accomplish such result by first testifying as to what defendant said to her about insurance, and then when he denied such conversation in self-defense, call such situation impeaching evidence. There was no occasion to bring the subject of insurance before the jury. Defendant did not waive the right to make the best he could out of a bad situation by denying that he had such conversation, as plaintiff claimed, on the subject of insurance. The court had ruled that what defendant said, according to plaintiff's version, on the

subject of insurance, was competent as an admission against interest, that is, that such evidence tended to show an admission of liability. We think that the ruling in Olian v. Olian, 332 Mo. 689, 59. S. W. (2d) 673, settles adversely to plaintiff the question arising on the subject of insurance. In that case it appears that the plaintiff, a boy thirteen years old, fell from the back porch of a third story apartment because a wire screen gave way. The suit was against the apartment owners. In the course of the trial, the plaintiff's father was asked if he had a conversation with the defendant owner at the hospital just after the accident, and if so, what was said. The witness answered: "He said he was very sorry, of course, and told me to go ahead and do all I could for the boy; to let no money stand in the way; he was fully insured for it; he would take care of it." The defendant objected and asked that the jury be discharged. The court overruled the objection and denied the request to discharge the jury, but admonished the jury that they would disregard the evidence about insurance "except insofar as . . . it may tend to show that the defendant, Louis G. Olian admitted liability." Plaintiff's mother, in the Olian case, was permitted to testify to about the same as did the father as to what defendant said about insurance. The court in ruling the assignment in the Olian case said that "the reading of this record discloses, we think, a persistent and insistent determination to get before the jury the fact that defendant had some sort of liability insurance which would protect him against loss from the jury's verdict, and that an insurance company would be merely paying what it had contracted to pay in consideration for the premium it had received." There are instances when it is proper to prove that a defendant has liability insurance, but such a case only arises when such evidence is relevant and material to some issue involved.

In Boten v. Sheffield Ice Company, 180 Mo. App. 96, 166 S. W. 883, plaintiff was assisting in tearing down an ice house belonging to defendant and was injured. Defendant's president testified that defendant did not own the house and that the foreman in charge of the work was not the foreman of defendant. The president of the ice company was asked if the defendant had taken out a policy of insurance "covering the liability of these men working on the razing of the building." The question was held competent on "the issue of whether or not the Sheffield Ice Company was tearing down the building and not the Bean Lake Ice Company." It was ruled that evidence that defendant took out indemnity insurance covering liability as to the men engaged in tearing down the building "would be of strong probative value going to show that it was doing the work." In Paepke v. Stadelman (Mo. App.), 300 S. W. 845, evidence of insurance was held competent on the issue of ownership of an automobile. [See, also, Jablonowski v. Modern Cap Manufactur-

ing Company, 312 Mo. 173, 279 S. W. 89; Garvey v. Ladd (Mo. App.), 266 S. W. 727; Burrows v. Likes, 180 Mo. App. 447, 166 S. W. 643, and Snyder v. Wagoner Elec. Mfg. Co., 284 Mo. 285, 223 S. W. 911.] A number of cases are cited and reviewed in Paepke v. Stadelman, supra, and it is not necessary to here say more on the subject of when evidence of insurance is competent.

As stated, there was no occasion to bring the subject of insurance before the jury, and plaintiff should not have mentioned the subject in relating the conversation she says she had with defendant at the hospital. If defendant had insurance to cover liability, such, under the facts here, was no evidence tending to establish any fact in issue. It is contended that there is no complaint on the ground that the evidence did not warrant a finding for plaintiff, and that there is no complaint that the verdict is excessive, and it is contended that the verdict is not excessive, and that such being the situation, defendant was not injured and, therefore, the insurance question should not work a reversal. It is true that plaintiff's evidence was sufficient to warrant a finding for her, and that defendant does not challenge the sufficiency of the evidence, and it is true that defendant in his assignments does not specifically assign on an excessive verdict. But if a losing defendant in a damage case cannot complain of the injured party wrongfully getting before the jury that the defendant is covered by insurance, because the evidence is sufficient to support a finding for plaintiff and because the verdict is not excessive, then in such case, there would be no limit to which a plaintiff could go in advising the jury that the defendant was covered by insurance. If a defendant should confess negligence in the pleadings or in open court, or the evidence as to his negligence was such that reasonable minds could not differ, and the verdict in amount be clearly not excessive, or if a defendant made no objection or saved no exception respecting insurance, then there would be no ground for complaint. But that is not the situation here. Defendant did not confess his negligence, nor is the evidence as to his negligence such that reasonable minds could not differ. It is not necessary to express any opinion as to the amount of the verdict and we do not. Defendant at all times preserved his record on the insurance subject and while he did not assign specifically on an excessive verdict, he did assign that "the verdict is the result of bias, prejudice and passion . . . and was induced by the inflammatory and prejudicial character of the evidence, statements and arguments admitted." Defendant's evidence tended to show that he was not negligent and he had the right, under the facts here, to go to the jury on the issue of his negligence free from the chance of this issue being lightly considered by the jury because they might believe that he was protected by insurance. A plaintiff "should never try his cause on the theory that if he can in some way get the jury to understand that

an insurance company will ultimately have to pay the damages assessed, he is sure *to win his case* and get a big verdict.'' (Italics ours.) [Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673, l. c. 677.] We do not mean to imply that plaintiff's case was tried on such theory, but we quote the excerpt from the Olian case to show that the amount of the verdict may not be the only thing. that may be affected when the jury has paraded before them the subject of insurance as in this case. Plaintiff had no valid reason to introduce the subject of insurance in this cause. [Olian v. Olian, supra; Hannah v. Butts, 330 Mo. 876, 51 S. W. (2d) 4; Crapson v. United Chautauqua Company (Mo. App.), 27 S. W. (2d) 722; Robinson v. McVay (Mo. App.), 44 S. W. (2d) 238. See, also, A. L. R., notes to Jessup v. Davis (Neb.), 211 N. W. 190, 56 A. L. R. 1403, and Stehouwer v. Lewis (Mich.), 227 N. W. 759, and 74 A. L. R. 844.]

The judgment should be reversed and the cause remanded and it is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.