JOSEPH C. SCHROEDER v. ELLA G. RAWLINGS, Administratrix of the Estate of VIRGIL E. RAWLINGS, Appellant.—127 S. W. (2d) 678.

Division One, May 2, 1939.

*Clark M. Clifford* and *George F. Wise* for appellant.

*Ford W. Thompson* for respondent.

632

HAYS, P. J.—Action for damages in the sum of $10,000 for personal injuries and property damage sustained by plaintiff, an attorney, in a collision of automobiles which occurred in the city of St. Louis on the morning of May 19, 1932, on Oakland Boulevard, which bounds Forest Park on the south. At the trial of the case in May, 1936, the defendant obtained a verdict. On motion of the plaintiff, the court below set the same aside on the first and sixth grounds of the motion and granted plaintiff a new trial. The case is here on defendant's appeal from that order. The material facts are few and in substance as follows:

Three automobiles were proceeding in series eastward on Oakland Boulevard, maintaining approximately the same rate of speed, twenty miles an hour. A sprinkler truck was approaching from the opposite direction. Plaintiff was driving the second car, a Willys-Knight sedan, distant from the other two cars approximately twenty feet; the foremost car, a new sedan, was operated by Virgil E. Rawlings (the present appellant's husband, now deceased). When Rawlings' car reached a point about 130 feet west of Central Avenue, a cross

street, it slowed down, displayed its electric rear stop-light and came to a stop. The plaintiff saw the stop-light signal, immediately undertook to stop and at the same time to give a hand-signal to the car in the rear. The Rawlings car and plaintiff's car came lightly together, and almost at the same time, the third car, a Cadillac sedan, operated by Mr. Robinson (accompanied by his wife and child), ran into the rear end of plaintiff's car and shoved it with some violence against the Rawlings car. It seems that the injuries in controversy were immediately caused by the force of the latter impact or collision. Rawlings and Robinson got out of their respective cars and talked with plaintiff. Rawlings' version of the casualty was in substance that as he neared the approaching sprinkler truck he, realizing it would wet his car and others, gave a hand or arm signal to the truck and at the same time undertook to stop his own car and to operate the electric stop-signal. Rawlings said that he slowed down gradually, moving about forty feet from the point where he first applied his brakes.

The sixth ground in the motion virtually includes the first, and is ". . . that on the admitted facts . . . the verdict is not only the result of erroneous instructions, but distinctly shows that the (court's) announcement that 'there is no evidence that an insurance company is interested in this case' prejudiced the jury against plaintiff, that the verdict is the result thereof and of the refusal of the court to permit the plaintiff to fully cross-examine the defendant."

The consideration of the points made will require the statement of some of the testimony in detail, and hereinafter, for the most part, we refer to Rawlings, now deceased, as the defendant. Plaintiff testified that, after his car was stopped, some one came to the door and asked if he was hurt, and he said "Yes;" that defendant, after the accident, came back to him and said that he, defendant, had just had his car washed and that he did not want to get it dirty; that defendant repeated the above statement two or three times; that he repeated it to plaintiff alone, and in the presence of plaintiff's sister (who had driven up after the accident), and in the presence of Mr. Robinson, the driver of the car in the rear. Plaintiff testified that Mr. Robinson was driving a Cadillac car, which had been following about twenty-five or thirty feet behind him. After the appearance on the witness stand of the plaintiff, in which he gave the above testimony, the court declared a ten-minute recess. Thereafter, three other witnesses for the plaintiff were on the stand, and subsequently plaintiff himself was recalled by his counsel. After being so recalled he was again interrogated by his counsel as to the conversation which passed between defendant and himself after the collision. Plaintiff then testified that defendant told him that he did not want to get his car dirty because he had just had it washed, and that he expected

the driver of the sprinkling truck to stop, and thought that he would stop; that he and defendant exchanged names, and defendant asked him if he had insurance, and plaintiff replied, "No;" that defendant said, "I have insurance." Thereupon defendant's counsel moved the court to instruct the jury to disregard the answer of the witness as to insurance, and to instruct the jury that there was no evidence that there was any insurance company interested in the outcome of the case; and defendant's counsel further asked that, if the court refused to so instruct, the jury be discharged and a mistrial declared, because of the prejudicial remark made by plaintiff. The court indicated that it would not pass upon the motion until the following morning. Whereupon defendant's counsel called attention to the fact that it was then four-thirty P. M., and urged the court to instruct the jury while the matter was fresh in their minds. The court finally refused to rule the motion until the following morning.

At the opening of court the following morning the court orally instructed the jury that they should disregard plaintiff's statement as to what defendant said about having insurance; and further instructed that there was no evidence of insurance in the case. The trial then proceeded. The defendant testified as the sole witness in his own behalf. On cross-examination he was asked if he did not think he was responsible to the Robinson, or Cadillac, car for any injuries that he might have done it. Objection to the question was sustained. He was also asked whether he had been sued by the people who owned the Cadillac car. Again objection was sustained. On further cross-examination, plaintiff's counsel brought out that defendant had made a report of the accident to the chief of police. When asked whether he had made a report of the accident to anyone other than the chief of police, defendant replied in the negative, but said that he had made a verbal report to his attorney. It was further brought out, on cross-examination of defendant, that he had only known Mr. Clifford, his trial attorney, about a month, and that Mr. Clifford had never acted as his attorney before. Out of the hearing of the jury, plaintiff's counsel stated to the court that he had before him the original court files in the case of Jeanie Robinson, by next friend, against Virgil Rawlings, and also had the files in the case of Mrs. Frank Robinson against Virgil Rawlings; that there were judgments entered in 1935 against defendant in the Robinson cases; and that Mr. Clifford represented defendant in both cases; that he, plaintiff's counsel, wished to interrogate defendant with reference to the Robinson cases for the purpose of affecting his credibility. Mr. Clifford thereupon stated to the court that one of the cases was merely a settlement by stipulation, and that the other one was a friendly suit; that he had not even contacted the defendant at the time of the friendly suit, but that the first time he ever saw defendant was when the instant case was set.

In the hearing of the jury, plaintiff's counsel asked defendant if Mr. Clifford had appeared as his lawyer in the case of Mrs. Frank Robinson against him. Objection was sustained. Defendant was also asked on cross-examination if he knew anything about the Robinson cases prior to the trial then going on. Objection was sustained. However, plaintiff's counsel was permitted, over defendant's objection, to ask whether he (defendant) had met Mr. Clifford in connection with the Robinson cases, to which defendant replied in the negative. Objections were sustained to questions as to whether defendant recalled any service being had upon him in either or both of the Robinson cases; whether he was required to defend them, and if Mr. Clifford represented him. Plaintiff offered to prove that there was a judgment against defendant in each of the Robinson cases, and that these judgment were satisfied of record, and that Mr. Clifford represented defendant. Objection to the offer was sustained.

Counsel for plaintiff (respondent) directs attention to the circumstance that he interrogated, without objection, the panel of jurors on the *voir dire* as to their connection, etc., with insurance companies, including the company he assumed was defendant's insurance carrier. This was proper and within plaintiff's right in order that he might "know the relation of the members of the panel to the parties and those interested in the result of the case. . . . He is presumed to be acting in good faith when he makes the inquiries," and if it appears "that counsel had reasonable cause to believe an insurance company, or any insurance agency, was interested, and that he acted in good faith in making the inquiries, the sound discretion of the court in controlling and directing the examination will be sustained. On the other hand, if it should appear from the record that the counsel has abused the privilege, and the inquiries were not for the purpose of being able to intelligently make peremptory challenges, the action of the court in permitting the inquiries would not be sustained." [Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 396, 11 S. W. (2d) 268, 1. c. 274.] It obviously follows that the inquiries so authorized are limited to the sole purpose stated above, and the matter of liability insurance so assumed did not, although counsel appears to think it did, become relevant to the material issue in the instant case.

So, we start with negligence *vel non* as the sole issue here. It seems that, in making his opening statement to the jury, defendant's counsel stated that it would be shown that immediately after the collision defendant got out of his car and walked back to plaintiff's car and asked him if he was hurt and that he answered, "No, that he was not hurt." Plaintiff denied making such statement, and stated that in the same conversation defendant said "he had insurance." It is contended that, in as much as defendant's counsel had so referred to a part of the conversation, plaintiff was entitled

to the whole, both on the theory of *res gestae* and on the theory of admission of liability.

It may broadly be stated that the term *res gestae* relates to and authorizes the reception in evidence of matter incidental to the main fact and explanatory of it, but confined to acts and words which are so clearly connected therewith as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood. The facts concerning the collision were complete in respect of the cause, the result, and the fault of one or the other or all the participants. The main facts were few and plain and fully understood by them all. Evidence that defendant carried liability insurance could properly add nothing to the facts of the casualty or the negligence from which it arose. It follows that such admission, if made, was mere narrative and not a part of the *res gestae*. "A statement which is merely narrative of past transactions or events is not admissible as part of the *res gestae*, even though it was made soon after the occurrence to which it relates." [22 C. J., p. 467, sec. 556; Dudley v. Wabash Ry. Co., 171 Mo. App. 652, 154 S. W. 462.]

The principle of relevancy is basic not only in the application of the *res gestae* rule, but also in the determination of plaintiff's contention that evidence of what defendant said about having liability insurance tended to establish an admission of liability. It has been said that "there are instances when it is proper to prove that a defendant has liability insurance, but such a case only arises when such evidence is relevant and material to some issue involved." [Whitman v. Carver, 337 Mo. 1247, 88 S. W. (2d) 885, l. c. 888. See, also, Olian v. Olian, 332 Mo. 689, 59 S. W. (2d) 673.] We do not think it necessary to state the facts of the Whitman and Olian cases. It is sufficient to say that the situations obtaining in those cases were similar in many respects to the situation in the instant case. It is stated in the Olian case (332 Mo. 689, 59 S. W. (2d) l. c. 677) that a plaintiff "should never try his case on the theory that, if he can in some way get the jury to understand that an insurance company will ultimately have to pay the damages assessed, he is sure to win his case and get a big verdict."

In Boten v. Sheffield Ice Co., 180 Mo. App. 96, 166 S. W. 883, evidence of liability insurance was held proper. In that case it appears that the plaintiff was injured while assisting in tearing down an ice house belonging to the defendant. The defendant's president testified that his company did not own the ice house and that the foreman in charge of the work was not the defendant's foreman. The president was asked if his company had taken out a policy of insurance covering the men who were tearing down the building. The question was held competent on "the issue of whether or not the Sheffield Ice Company was tearing down the building, and not

the Bean Lake Ice Company." And it was held that evidence that the defendant took out insurance covering liability as to the men engaged in tearing down the building "would be of strong probative value going to show that it was doing the work."

In Paepke v. Stadelman, 222 Mo. App. 346, 300 S. W. 845, evidence of liability insurance was held competent on the issue of ownership of an automobile. On the propriety of asking questions implying that a defendant has liability insurance, see Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S. W. 89, 1. c. 97; Burrows v. Likes, 180 Mo. App. 447, 166 S. W. 643.

It is not necessary to further extend this discussion. We hold that defendant's statement that he had insurance was not competent on the theory that it tended to establish an admission of liability. [Whitman v. Carver, supra; Olian v. Olian, supra; Hannah v. Butts, 330 Mo. 876, 51 S. W. (2d) 4; Crapson v. United Chatauqua Co. (Mo. App.), 27 S. W. (2d) 722; Robinson v. McVay (Mo. App.), 44 S. W. (2d) 238; Jessup v. Davis, 115 Neb. 1, 211 N. W. 190, 56 A. L. R. 1403; Stehouwer v. Lewis, 249 Mich. 76, 227 N. W. 759, 74 A. L. R. 844.]

As appears, supra, plaintiff sought to get before the jury that Mr. Clifford, the attorney representing defendant at the trial, had appeared for defendant in the Robinson cases. These cases grew out of the collision involved in the instant case, and were disposed of about two years prior to the trial of the instant case. Reference to these cases followed hard on the heels of the evidence that defendant had only known Mr. Clifford for about a month. Certainly, the fact that Mr. Clifford appeared as counsel for defendant in the Robinson cases was wholly immaterial to any issue involved in the instant case, and the inquiries, as to Mr. Clifford representing defendant in the Robinson cases, if fully developed, would probably have left the implication that actually Mr. Clifford represented defendant's insurer in those cases. At the trial, plaintiff contended that evidence that Mr. Clifford represented defendant in the Robinson cases was competent for impeachment purposes. The impeachment theory was relied on in Whitman v. Carver, supra. There we said (337 Mo. 1247, 88 S. W. (2d) 1. c. 888): "Plaintiff would be only interested in affecting adversely the credibility of defendant, and certainly she could not properly accomplish such result by first testifying as to what defendant said to her about insurance and then when he denied such conversation in self-defense call such situation impeachment evidence." And it is the law that immaterial and incompetent evidence cannot be got before a jury under the guise of impeachment. [O'Shea v. Opp, 341 Mo. 1042, 111 S. W. (2d) 40.]

We are quite clear that plaintiff was not entitled to a new trial on the ground that the court instructed the jury there was no evidence that an insurance company was interested in the case, or on

the ground that plaintiff was improperly restricted in the cross-examination of defendant.

Even though the grounds assigned by the trial court for granting a new trial are not sufficient, yet if there are other grounds in the motion, to support the new trial, the order granting same should be sustained. However, in such situation, the burden is on the party obtaining the new trial to show that other grounds in the motion are sufficient. [Yuronis v. Wells, 322 Mo. 1039, 17 S. W. (2d) 518, l. c. 523; Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. (2d) 548; l. c. 554; Simmons v. Kansas City Jockey Club, 334 Mo. 99, 66 S. W. (2d) 119, l. c. 120; Sakowski v. Baird, 334 Mo. 951, 69 S. W. (2d) 649, l. c. 651; Tabler v. Perry, 337 Mo. 154, 85 S. W. (2d) 471, l. c. 476; Engelman v. Railway Express Agency, 340 Mo. 360, 100 S. W. (2d) 540, l. c. 544.]

The motion for a new trial assigned error on Instruction No. 1 (plaintiff's main instruction) given on the court's own motion, and on Instruction No. 5, given at the request of defendant. Plaintiff submitted Instruction A, but the court refused it, and gave, instead, Instruction No. 1.

Under Instruction No. 1 plaintiff could not recover unless the jury found that defendant stopped without giving any warning at all. Defendant testified that he signaled the sprinkler truck with his left hand; that he slowed down his car gradually "using my brake slowly." He also testified that when he went back to plaintiff's car, after the collision, he said to plaintiff: "I gave you a signal with my arm; there was plenty of time for you to stop." And plaintiff admits that he saw the stop-light appear in the rear of defendant's car. Plaintiff testified that defendant "came to an abrupt stop. The car kind of shook, and the light was very dim—the stop-light was hardly noticeable." Then plaintiff was asked: "Was there any signal at all given by him (defendant), and if so, what was it? A. None whatever." Clearly, plaintiff meant that defendant did not give any stop signal with his hand and arm.

Instruction A, which was refused, would have submitted plaintiff's case on the theory that defendant stopped "without giving plaintiff a reasonable warning," and the instruction went on to tell the jury what the driver of an automobile, on a public highway, must do when stopping or slowing down as provided in subdivisions (h) and (k) of Section 7777, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7777, p. 5213).

Subdivision (k) of Section 7777 provides that "if a motor vehicle is equipped with a mechanical or electrical signaling device, which will display a signal plainly visible from the rear and indicating intention to turn or stop, or that the speed of the motor is being slowed, the signals with the hand and arm, herein required, need not be given."

Under the evidence, the only question, as to defendant's negligence, was whether or not he gave a reasonable warning of his intention to stop, and, as stated, plaintiff's refused Instruction A was on that theory. Instruction No. 1, given on the court's own motion, was, in effect, peremptory to find for defendant, because there was no evidence that defendant *did not give any warning* of his intention to stop. We think that the giving of Instruction No. 1 was error.

Instruction No. 5 given at the request of defendant told the jury that if they found that the collision "was not due to any negligence on the part of the defendant . . . in the operation and stopping of his automobile . . . but was due to the negligence of persons other than the said Virgil Rawlings" then plaintiff could not recover. Clearly this instruction is bad. It authorized the jury to speculate on *whose* negligence and *what* negligence may have caused the collision. The instruction clearly invited speculation that the driver of the Robinson car might have caused the collision by some act of negligence. Defendant answered by a general denial and a plea of contributory negligence, but did not plead any specific act of negligence on the part of plaintiff or any other person. If defendant desired to rely upon the negligence of plaintiff or of a third person, it was his duty to submit to the jury the specific acts of negligence relied upon, which the evidence tended to support. [Watts v. Moussette et ux., 337 Mo. 553, 85 S. W. (2d) 487, l. c. 491-492, and cases there cited. See, also, McGrath v. Meyers et al., 341 Mo. 412, 107 S. W. (2d) 792, l. c. 795; Pearrow v. Thompson, 343 Mo. 490, 121 S. W. (2d) 811, l. c. 815.]

The order granting a new trial should be affirmed. It is so ordered. All concur.