BALTIMORE & O. R. CO. v. McCUNE.

(Circuit Court of Appeals, Third Circuit.   November 29, 1909.)

No. 16

1. COURTS (§ 356*)—EXCEPTIONS TO RULING—PENNSYLVANIA PRACTICE.
The provision of the Pennsylvania Practice Act of April 22, 1905 (P. L. 286), which imposes upon a court refusing a motion for judgment non obstante veredicto, properly made thereunder, the duty of certifying the evidence and granting an exception to the party against whom the ruling is made, under the conformity act (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), is applicable to the federal courts in that state, and no separate request for such exception is necessary.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. § 356.*

Conformity of practice in common-law actions to that of state court, see note to O'Connell v. Reed, 56 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

2. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR—NECESSITY.
A Circuit Court of Appeals may take notice of a plain palpable error appearing in the record, the correction of which is necessary to the administration of justice between the parties, even though it is not the subject of an assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982; Dec. Dig. § 719.*]

3. PATENTS (§ 328*)—INFRINGEMENT—LOCOMOTIVE ASH PAN.
The McCune patent, No. 341,930, for a locomotive ash pan, held not infringed on evidence showing that the ash pans in use by defendant lacked features essential to those of the patent to differentiate them from the prior art, and also that defendant had used substantially the same pan prior to the application for the patent.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by James B. McCune against the Baltimore & Ohio Railroad Company.   Judgment for plaintiff, and defendant brings error.   Reversed.

Robert J. Fisher, for plaintiff in error.
J. M. Martin, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge.   This is an action on the case, brought in the court below against the Baltimore & Ohio Railroad Company, the plaintiff in error (hereinafter called the defendant), to recover damages for the alleged infringement of letters patent No. 341,930, granted May 18th, 1886, to James B. McCune, defendant in error (hereinafter called the plaintiff), for a locomotive ash pan.   The suit was begun February 12th, 1906.   The American patent expired May 18th, 1903. Under the provisions of section 4921 of the Revised Statutes, as amended by the Act of March 3d, 1897 (29 Stat. 692, c. 391, § 6 [U. S. Comp. St. 1901, p. 3395]), relating to the limitation of actions,

there was a period of only a little more than three years for which, in any event, recovery could be had.

The issue was, whether or not the defendant had infringed the plaintiff's patent within this period, the validity of or title to the patent not being contested.

At the close of the plaintiff's testimony in chief, a motion was made by the defendant for an involuntary nonsuit, upon the ground that the plaintiff had failed to prove infringement. This motion was refused by the court.

At the close of all the testimony, a motion was made on behalf of the defendant, for binding instructions to the jury to find a verdict for the defendant, which motion was also refused. The case was then submitted to the jury, after a charge by the court, and a verdict was rendered in favor of the plaintiff. A motion was then made by defendant for a new trial and also, under the act of Assembly of the state of Pennsylvania (P. L. 1905, 286), for a judgment non obstante veredicto. These motions were also refused, and judgment entered on the verdict, whereupon the writ of error, which brings the case before us, was sued out by the defendant. It has been urged in the oral argument that, inasmuch as no exception was taken to the refusal of the court below to enter judgment non obstante veredicto, no assignment of error could be based thereon. We think, however, that under the conformity act, section 914 of the Revised Statutes (U. S. Comp. St. 1901, p. 684), the act of Assembly of the state of Pennsylvania of 1905 is applicable here. That act imposes upon the court refusing a motion for judgment non obstante veredicto, properly made under the act, the duty of certifying the evidence and granting an exception to the party against whom the decision is rendered. It is argued that no motion is necessary for the granting of such exception, the motion for judgment non obstante veredicto being made with the view of having, in the case of its refusal, the evidence certified and an exception granted for the purpose of furnishing ground for the suing out a writ of error, the office of an exception being thus supplied by the law. But, however this may be, this court is at liberty to take notice of a plain, palpable error appearing in the record, the correction of which is necessary to the administration of justice between the parties, even though the same be not the subject of an assignment by the party aggrieved.

Without regard, however, to either of the foregoing propositions, we find that defendant's first request to the court to charge the jury was, "that under the pleadings and the evidence in this case, the verdict of the jury must be in favor of the defendant," and it is disclosed by the record that the trial judge "did then and there refuse and decline to instruct the jury as therein requested; to which ruling and decision of the court, defendant's counsel did then and there except, and prayed that a bill of exceptions might be sealed for defendant, and at the instance of defendant's counsel, said bill of exceptions was sealed." All of the evidence is therefore brought up by the record and is before this court, for the purpose of considering whether there was any evidence that would warrant the jury in finding a verdict in favor of the plaintiff.

The specification of the plaintiff's patent thus speaks of his inven-
tion:

"My invention relates to locomotive and fire engine ash pans; and consists
in the parts which will be hereinafter described, and pointed out in the
claims.

"The invention consists in a sectional movable bottom, the abutting sec-
tional ends being covered by a stationary bridge to prevent the coal and ash-
es from falling through the joint.

"The invention further consists in levers for operating the sliding sections."

The drawings and specifications of the patent illustrate and describe
a locomotive ash pan, hung underneath the grate bars of the fire box,
consisting of a rectangular box-like structure, with vertical sides and
ends, and a flat bottom, divided transversely into two equal sections.
These two sections are closed and abut each other when in position for
receiving the ashes from the grate. On either side of these sectional
bottoms, are flanges, adapted to slide in grooved guides fitted for their
reception, by means of which the two sections of the bottom may be
drawn longitudinally in opposite directions, parallel with the tracks
on which the locomotive is standing, for the removal of the ashes.
When the sectional bottoms are closed and abut, they meet under an
inverted V-shaped bridge, resting upon the upper surface of the
grooved guide rails and secured to the fixed sides of the ash pan.
This V-shaped arch extends entirely across the ash pan, immediately
above the bottom thereof, and serves to prevent the ashes from fall-
ing through the joint of the abutting bottom sections. This bridge
serves two purposes: First, that of preventing coal and ashes fall-
ing through the joint formed by the meeting ends of the bottom sec-
tion; second, keeping these ends free from obstruction, so that they
will not be prevented from closing tightly. The patentee thus speaks of
this bridge in his testimony:

"That is a bridge, so the bottoms can pass underneath and they won't in-
terfere from coming together, and there is no ashes or nothing can get there
to do any harm. These bottoms have got to pass underneath that bridge;
and when they are in there they can't get out of place and the ashes drop
right over the top of this (bridge), so it don't interfere with the bottoms
drawing at all and acts as a guard to keep the ashes from falling out when
the locomotive is in motion."

In order to operate the sliding bottom sections, levers may be used,
with appropriate connections to be operated from the cab of the loco-
motive. The claims of the patent are as follows:

"1. An ash-pan having a sectional or two part bottom, said bottoms having
side flanges, grooved side guide rails for the reception of said flanges, and lev-
ers secured to the movable sections, whereby said sections may be opened and
closed, substantially as described, and for the purposes set forth.

"2. An ash-pan having fixed sides and ends, grooved guide rails along said
sides, a fixed bridge secured to the sides and located within the pan, movable
flanged bottom sections, the flanges whereof being movable located in the
grooved guide rails, and levers to open and close the movable sections, sub-
stantially as described, and for the purposes set forth.

"3. An ash-pan having fixed sides and ends and a movable sectional flanged
bottom, side grooved guide rails for the reception of the flanged sides of the
movable sections, an inverted V-shaped bridge centrally located within the
ash pan to cover the abutting ends of the movable sections when closed, and

174 F.—63

a lever provided with arms for connecting said movable sections, substantially as described, and for the purposes set forth."

These claims, and the specifications to which they refer, either expressly or by necessary implication require flanges on the side edges of the sliding bottom sections, and the meeting or abutting of the ends of these sections under the inverted V-shaped bridge. There is no evidence of any invention by the patentee prior to the date of his application for his patent, and that date is therefore, prima facie, the date of his invention, February 9th, 1886.

Sliding bottoms to ash pans were old in the art at the date of the application for the patent in suit. These ash pans were, as pointed out in the brief of plaintiff in error, of two general types,—first, a flat, comparatively shallow structure, provided with either a single opening or a series of openings in the bottom, closed by a slide or slides. In bottoms in which there is more than one opening, the pan has been provided with a series of bridges, not for the purpose of covering the abutting ends of a sectional bottom, as in the device of the patent in suit, but for covering or bridging the openings under which the slides move when dumping the ashes, the lower edges of the inverted V-shaped bridge serving to scrape the ashes off the slides as they are moved. This form of ash pan is obviously adapted, as is the ash pan of the patent in suit, for use in locomotives in which there are only two pairs of driving wheels, and in which there is room between the axles of the driving wheels for the entire pan. The plaintiff in error cites examples of these ash pans in the patents to Spear and Wight, Dodge, Bissell, and Graham. In the other type of ash pan, to quote from defendant's brief:

"There is a series of connected hoppers, the sides and ends of which are inclined toward the bottom of the hopper. Each hopper has a separate sliding bottom. In some instances, these bottoms are operated individually; in others, together; but in all, the ashes are discharged by gravity when the bottom slide is drawn back. In effect, this type is two or more ash pans, each provided with its own (sliding) bottom."

This type of ash pan is adapted for locomotives in which, for lack of room, it is necessary for the ash pan to straddle an axle.

It is not necessary to examine or discuss in detail the devices covered by the various patents cited by defendant, as existing in the prior art. Their citation by the defendant, as special matter attacking the validity of plaintiff's patent, having been expressly abandoned, they are only now referred to to interpret the claims of the patent in suit, and restrict them to the special device set forth in the drawings and specifications. The essential features of this special device, viewed in the light of the prior art, are, then, (1) the flanges on the sides of the sectional bottoms engaging with the grooved side rails, (2) the abutting ends of the bottom sections under the inverted V-shaped bridge, and (3) the specific arrangement of levers for operating the sliding bottoms.

We confine ourselves, therefore, to the consideration of what the record discloses, as to the use by the defendant, long prior to the date of the invention of the patent in suit, of the device now charged as an infringement of said patent. The testimony as to this was correctly admitted by the court below, over the objection of the plaintiff, on the

ground that it was not the introduction of evidence as to prior use affecting the validity of the patent, but evidence tending to show the rightful use by defendant of the alleged infringing device, on the ground that it had used it long prior to the application for the patent in suit. This fact being established, there is clearly no infringement, and that was the precise issue raised by the plea of "not guilty" in the court below.

Referring, therefore, to the testimony in the record as to this alleged infringing device, we find the following: Plaintiff's Exhibit No. 2 was introduced as a sketch to show the essential features of defendant's alleged infringing device, and defendant relies upon the same to establish the fact that, prior to the patent in suit, substantially this device was in use by it. It is constructed in two compartments, with the connecting inverted V-shaped arch for the purpose of straddling the axle of a pair of wheels. It is of the hopper type, as the inclining sides of the inverted V tend to carry the ashes to the bottom. The sliding bottoms obviously do not abut, when the two compartments are closed, and the testimony shows that these bottoms are made to slide by having their side edges engaged in a grooved guide attached to the lower edges of the sides of the ash pan. There are no flanges, as in the patent in suit, attached to the edges of these bottoms, for engagement in the grooves. Sliding bottoms, as has been abundantly shown, were old in the art. These sliding bottoms are separately operated by an independent lever attached to each of them. It is conceded that this exhibit shows the ash pan in use by the defendant. We have also the uncontradicted testimony of one Mr. Harrington, a mechanical engineer, who was in the employ of the defendant from December, 1871, to December, 1879. He testifies to making a drawing some time in 1873 for use upon the locomotive received from the Danforth Locomotive Company, of an ash pan, in all respects similar to that shown by Exhibit No. 2, introduced by plaintiff as an illustration of defendant's alleged infringing device. Looking at the drawing made by him at that time, he testified to all the substantial details shown thereby. He also testifies to the use by the defendant company of engines with ash pans, of a construction similar to plaintiff's Exhibit No. 2.

The evidence of the use of ash pans by the defendant on its locomotives, similar in all respects to plaintiff's exhibit of defendant's infringing device, was abundant and uncontradicted.

We therefore conclude, first, that no infringement is shown, for the reason that the alleged infringing device of defendant differs in essential particulars from the construction of the patent in suit. The defendant's device has twin hoppers, with inclined sides and ends leading to an opening, and discharging by gravity. The device of the patent in suit is a single, flat pan, with vertical sides and ends, from which the ashes must be scraped by a depending curtain piece. Each of the defendant's hoppers is independent of the other, and is provided with an integral or one part bottom, whereas the device of the patent in suit is provided with a sectional or two parts bottom, the ends of which must abut, in order to form a closed bottom. Moreover, the

independent sliding bottoms of the defendant do not and cannot abut under a bridge, or otherwise. The defendant's ash pan is not provided with a bridge over a joint between two abutting bottoms, as is the case in the patent in suit. The function of the bridge in the alleged infringing device is entirely different from that of the bridge in the device of the patent in suit. The function of the former is to connect the two independent hoppers over a locomotive axle. The function of the latter is to protect the meeting ends of the sliding sectional bottoms and to prevent ashes from sifting through the joint formed by the meeting ends. Moreover, sliding bottoms, as we have said, were old in the art, and the only novelty in connection therewith, that can be claimed for the device of the patent in suit, is the flanges upon their sides, which engage with the grooves of the guide rails. The defendant's device has no such flanges, the edges of the sliding bottoms of the hopper resting on said grooves.

As in view of the prior art, the plaintiff's invention must be confined to a combination of the specific sectional abutting bottoms, with flanges on their longitudinal edges to engage the guide rails attached to the sides of the ash pan, and the inverted V-shaped bridge covering the abutting ends of the sectional bottoms when the ash pan is closed, the defendant's device, possessing none of these essential elements of the combination, does not infringe.

Moreover, as the uncontradicted evidence shows that the defendant's device was the device substantially in use by it prior to the date of the patent in suit, it is clear that, on all the evidence, there should have been peremptory instructions for a verdict in favor of the defendant.

The judgment below is therefore reversed.