# CHARLES BURROWS, Respondent, v. J. C. LIKES, Appellant.

### Springfield Court of Appeals, May 12, 1914.

1. **MASTER AND SERVANT: Negligence: Evidence: Jury Question.** In an action against the master for injuries resulting to servant from alleged negligence in furnishing improper appliances and an unsafe place to work, plaintiff's statement in his own behalf, though contradicted by other witnesses, considered sufficient to make a question for the jury.

2. **INSTRUCTIONS: Assuming Negligence: Error.** In an action against the master for injuries received by the servant while using a pump for pumping water from pits, an instruction was erroneous which assumed that it was negligence for the defendant not to have made a platform, erected a guardrail or furnished lights for doing the work.

3. ———: **Invading Jury's Discretion: Error.** In an action action against the master for injuries to the servant because of alleged negligence on the master's part, an instruction which takes from the jury the question of the master's negligence is erroneous and constitutes reversible error.

4. ———: **Conflicting Evidence: Facts Not to be Assumed.** Where the evidence conflicts as to the practicability of a master furnishing certain safeguards, an instruction which assumes that the furnishing of these safeguards was practicable, is erroneous.

5. ———: **Assuming Facts: Error.** An instruction is erroneous which assumes as true a controverted and material fact.

6. ———: **More Comprehensive than Allegations or Claim: Error.** In an action by a servant for personal injuries, where no claim was made by plaintiff that it would be negligent for defendant to fail to do *one* of the three things enumerated, provided one or more of the other things mentioned were done, an instruction susceptible of being understood as requiring *all* of these things to be done and making the failure to do, any one of them negligence, is erroneous.

7. **MASTER AND SERVANT: Reasonably Safe Place to Work: Instructions.** A master is only bound to furnish for the servant a reasonably safe place to work. An instruction setting out his duty in stronger terms is erroneous.

8. JURY: Ascertaining Qualifications: Improper Questions. A trial court should promptly check any attempt to use the privilege of ascertaining the qualifications of jurors as a mere ruse to impart improper and prejudicial facts to prospective jurors.

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson*, Judge.

REVERSED AND REMANDED.

*Sam P. Jennings, J. T. Craig & John P. McCammon* for appellant.

(1)   The court erred in permitting plaintiff's counsel to inquire of the jury as to whether they were in the employ of the Southern Surety Company or of the Missouri Fidelity & Casualty Company or if they were stockholders in the Missouri Fidelity & Casualty Company, over the objections of defendant, and in not discharging the panel when requested so to do by defendant. Trent v. Printing Co., 126 S. W. 238; Iverson v. McDonnell, 78 Pac. 202; Cosselman v. Dunfee, 65 N. E. 494; Manigold v. Traction Co., 80 N. Y. Supp. 861. (2)   The court erred in giving the first instruction asked by plaintiff. That instruction directed the jury, if they found defendant had negligently failed to provide plaintiff with a platform upon which to stand while using or adjusting said pump, or to provide guardrails or other barriers to prevent plaintiffs from falling into said pits while at work, or failed to provide sufficient lights for use of plaintiff while he was working in and about said pump or pits, and by reason of any negligence of defendant as aforesaid, plaintiff slipped, etc., then they must find for the plaintiff. Bailey Personal Injuries, sec. 178; 3 Labatt Master and Servant, p. 2501. (3)   It is not the duty of the master to furnish any particular kind of tools, implements or appliances. 3 Labatt, p. 2502; Tabler v. Railroad, 93 Mo. 79; Muirhead v. Railroad, 103 Mo. 251;

Glover v. Meinrath, 133 Mo. 292; Shinners v. Mullins, 117 Mo. App. 91; Chrismer v. Tel. Co., 194 Mo. 189, 92 S. W. 378; Railroad v. Finerman, 84 Ill. App. 389.

*E. G. Wadlow* and *Neville & Gorman* for respondent.

(1) The court committed no error in permitting inquiry of the jury as to whether they were in the employ of the Southern Surety Company or the Missouri Fidelity and Casualty Company. Meyer v. Cunglack-Nelson Mfg. Co., 67 Mo. App. 391. (2) The first instruction was an instruction in general terms and was proper. What acts of defendant constituted negligence under the circumstances was fully and clearly defined in other instructions.

STURGIS, J.—The plaintiff sues for personal injuries resulting in his thumb having to be amputated and alleged to have been received while working for defendant, who, as contractor, was constructing, and excavating for, certain septic tanks connected with the sewage system of Springfield, Missouri. The petition alleges that while working for defendant at the work of excavating for these tanks, he was directed to keep the water out of these pits by pumping same out with a hand pump provided for that purpose. The negligence assigned is: "First. That defendant negligently and carelessly failed to provide plaintiff with a platform upon which to stand while using and adjusting said pump. Second. That defendant negligently and carelessly failed to provide guardrails or other barriers to prevent defendant from falling into said pits while at work, as aforesaid. Third. That defendant negligently and carelessly failed to provide sufficient lights or any lights for plaintiff's use while working in and about said pumps and pits, as aforesaid." The answer controverted the fact of plaintiff

180 App. 29

being injured at the time and in the manner alleged, denies defendant's negligence and pleads contributory negligence and assumption of risk by plaintiff and that plaintiff had been settled with and paid for all the injuries received.

This latter allegation of the answer refers to the fact that plaintiff had received injuries about a month previous to the injuries now sued for by having this same thumb caught and crushed in some cogwheels while working for defendant at this same general work. It is conceded that this former injury was settled for in full and defendant denied that plaintiff received any distinctly new injury but claimed that the amputation of the thumb was caused by the injury received from the cogwheels, such injury having reached to the bone and being aggravated somewhat by plaintiff working and using his thumb before same had healed. While there is much evidence to this effect, the plaintiff testified positively that his former injury had become nearly well and that on the night of August 8, 1912, he was again injured by reason of slipping and falling while trying to lift the hand pump and that this pump then fell on his thumb, crushing it between the pump and a piece of timber or stake driven in the ground to keep the pump in place. This question was submitted to the jury under instructions to find for defendant unless the plaintiff received the new injury at the time and in the manner alleged and to allow nothing for the previous injury received from the cogwheels. While defendant urges that a demurrer should have been sustained to the evidence, we must hold that plaintiff's statement in his own behalf, however, much it was contradicted by other witnesses, furnishes some evidence to make this a question for the jury.

Stated most strongly for plaintiff, the evidence shows that he was working at night with a helper, who became sick about midnight and quit working, leaving plaintiff to continue the work alone; that part of

plaintiff's duties was to keep the water pumped out of the large pits, dug in the ground some fifteen to twenty feet deep, so that same would be dry in the morning for the workmen to commence working in the same; that plaintiff used a hand pump weighing about sixty pounds, with a hose attached, which he moved from one pit to the other in pumping water from same; that the pump was fastened to a heavy board two inches thick, ten inches wide, and about four feet long; that this set on the bank some two feet back from the edge of the pit and was fastened down and held in place by stakes driven in the ground, the hose going over the edge of the pit and down to the bottom. It is conceded that the pump merely set on the ground and that no platform, other than the one board to which the pump was attached, was provided and that no guardrail was erected around the pit or between it and the pump. The plaintiff testified, though this was contradicted, that no lights were provided or available for his use except some red lanterns and that these were of no value in giving light to work by; that he had complained and requested lights to be provided and that same were promised but had not yet been furnished when he was injured. Plaintiff's version of the accident is that about two o'clock in the morning, his helper being sick and gone, the night being dark and having no lights, the ground being wet and slippery from recent rain, he attempted to lift the pump to move it to the other pit, slipped and fell, grabbed hold of one of the posts driven in the ground to hold the pump in place and that the pump fell on his sore thumb, crushing it against this stake. His thumb was amputated six days later. The defendant's evidence tended to show that it was not practical to make any platform for this pump or erect a guardrail while digging the pits in the manner the work had to be done.

On this state of facts, the court gave the jury the following instruction, which is the principal instruc-

tion in the case: ''The court instructs the jury that if you find and believe from the evidence that on or about the 8th day of August, 1912, plaintiff was employed by defendant and that while so employed plaintiff was ordered by defendant to use a certain hand pump in and about certain pits, and you further find that defendant negligently and carelessly failed to provide plaintiff with a platform upon which to stand while using or adjusting said pump, or negligently and carelessly failed to provide guardrails or other barriers to prevent plaintiff from falling into said pits while at work as aforesaid, or negligently and carelessly failed to provide sufficient lights for the use of plaintiff while he was working in and about said pump or pits as aforesaid, and that while in the exercise of ordinary care and while so working, and by reason of any negligence and carelessness of defendant, as aforesaid if you find from the evidence defendant was so negligent, and careless, plaintiff slipped and fell into the edge of one of said pits, causing said pump to fall onto and injure his right thumb so that it was necessary to amputate same, then you will find the issues in favor of the plaintiff and assess his damages in such sum as you believe from the evidence will reasonably compensate him for such injuries not to exceed the sum of $4000.''

This instruction is erroneous and makes a reversal of the case necessary for two reasons: First, The instruction assumes that it was negligence for the defendant not to have made a platform, erected a guardrail or furnished lights in doing this work; it assumes that plaintiff was not furnished a safe place to work in the absence of these things being done. A jury reading this instruction must have understood that the law required defendant to do one or more or all of these things and that a failure to do so was negligence; in fact, the jury must have understood that the only thing they were required to do was to determine

whether defendant had done these things—if he had not, he was guilty of negligence. This is just such an instruction as would properly be given in a negligence case against a railroad for failure to ring the bell or sound the whistle on approaching a public crossing—a failure to do which is negligence as a matter of law. Here, however, the court could not assume that a failure to do any or all the things mentioned would be negligence. The defendant was required to furnish a reasonably safe place for the servant to work in but at most it was a question for the jury to say whether the place was reasonably safe without these things being done, or which, if any, of them were necessary to be done in order to make the place a reasonably safe one in which to work. The instruction also assumes that it was practical to have made a platform for a movable pump like this and erect a guardrail between it and the pit in doing this work while there is evidence to the contrary. In Abbott v. Mining Co., 112 Mo. App. 550, 556, 87 S. W. 110, in speaking of a similar instruction, the court said: "It assumed that it was negligence in defendant not to timber the mine, when there was evidence tending to show that at the place where plaintiff was at work it was not practical to do so. It should have contained some expression which would permit the jury to say whether it should have been timbered at that place. The action is not based on the statute requiring mine owners to furnish timbers and the question whether the mine could have been rendered safe and the injury avoided by the use of timbers must be determined without regard to that statute." It should, however, need no citation of authorities to show that it is error for an instruction to assume as true a controverted and material fact in a case.

In the next place, the plaintiff does not claim that it would be negligence in defendant to fail to do *one* of the three things mentioned, to-wit, build a platform,

erect guardrails, or furnish lights, provided one or both the other things were done. Yet, the instruction is susceptible of being understood as requiring all of these things being done and that a failure to do any one of them would constitute negligence, even if the others were done. The instruction is in the alternative and says that the failure to do one or the other is negligence. Such is the ruling on similar instructions in Turner v. Railroad, 87 Mo. 578; Halferty v. Railroad, 82 Mo. 90, 97; and Braddy v. Railroad, 47 Mo. App. 519, 521. As the evidence clearly showed that defendant had not made a platform and had not erected a guardrail, an instruction that a failure to do either one of these things constituted negligence practically amounted to a peremptory instruction to find for plaintiff.

It is uncertain under the evidence as presented in this record, whether a failure to erect a guardrail had anything to do with the accident. The only purpose of a guardrail would be to prevent plaintiff or other employees from falling into the pits. As we understand it, the plaintiff might have slipped and fallen by reason of the slippery ground around the pump and might have done this regardless of any guardrail, which could only have served the purpose of preventing his going into the pit. He might have fallen with the pump on his thumb by reason of the darkness and slippery ground had the pit been miles away.

As before stated, the plaintiff's theory of the case evidently is that plaintiff's place of work was rendered dangerous only because of the absence of all the three things mentioned as tending to make the place reasonably safe. The absence of the platform and guardrail was conceded though their absence was properly proven and is important as showing the necessity of having available lights. The whole question of negligence turns on the absence of available lights: (1) whether lights were necessary to make the place a rea-

sonably safe one in which to work, absence of a platform and guardrail being shown; and (2) whether defendant had on hand suitable available lights which could have been used by plaintiff. Plaintiff's second instruction correctly confines the issue to this one element of absence of lights. The instructions asked by defendant should not have been modified by the court so as to require the finding that defendant furnished a reasonably safe place to work *and also* available lights, for the reason that if defendant furnished a safe place to work that is all that is required and the jury might properly find, and this was the theory of the case, that furnishing suitable lights would of itself make the place reasonably safe. The modified instructions imply that something more than a safe place to work was required and that something more than suitable lights was required to make the place reasonably safe. The instructions on this phase of the case should be to the effect that it was defendant's duty to furnish a reasonably safe place to work and, if the place where plaintiff was required to work was not reasonably safe without lights and the furnishing of lights would make it safe, then it was defendant's duty to furnish same, etc.

Error is also assigned on the court's refusal to sustain an objection and discharge the panel of jurors because of plaintiff's asking the jurors on their *voir dire* examination if any of them were in the employ of or stockholders in the Southern Surety Company or the Missouri Fidelity & Casualty Company. It is claimed that the purpose of this was to covertly convey to the jury the information that an insurance company was back of defendant and would have to pay whatever judgment might be obtained. The answer is that one of these companies is a local company and had a large number of stockholders and employees in and about Springfield, where the case was being tried, and that plaintiff had a right to know the relation of the

jurors to a real party in interest. [Meyer v. Mfg. Co., 67 Mo. App. 389, 391.] Under the peculiar facts of this case, and especially with reference to the local company, these questions may have been proper and asked in good faith. The trial court was in a better position to know this than we are. Courts should, however, be very careful in permitting, and counsel should refrain from asking, such questions, except when the facts of a particular case might necessitate the same in obtaining proper information in challenging the jury. The mere asking of such a question is generally equivalent to giving direct information that an insurance company is obligated to take care of any judgment that may be rendered and the giving of such information is so irrelevant and prejudicial as to not only warrant the court in sustaining an objection but in discharging the jury because of the mere asking same. [Gore v. Brockman, 138 Mo. App. 231, 119 S. W. 1082; Trent v. Printing Co., 141 Mo. App. 437, 126 S. W. 238; Iverson v. McDonnell (Wash.), 78 Pac. 202; Cosselmon v. Dunfee (N. Y.), 65 N. E. 494; Manigold v. Traction Co., 80 N. Y. Supp. 861; Fuller Co. v. Darragh, 101 Ill. App. 664.] Ordinarily, the chance that some juror might have an interest in, or be an employee of, an insurance company interested in the result of the trial is so remote that the asking of such questions is no more than an indirect means of improperly informing the jurors of such company's interest and would evidently be asked for no other purpose. Any information proper for an attorney in making his challenge can usually to be obtained in other ways, as by inquiring as to the occupation and business of jurors, etc. The court should be prompt in checking any attempt to use the privilege of ascertaining the qualifications of jurors as a mere cloak to impart improper and prejudicial facts to prospective jurors. As before stated, we do not hold this to be reversible error in the present case but have made these remarks lest this opinion

be construed as approving the asking of similar questions in other cases on the ground that attorneys have a right to be informed as to the occupation and business interests of jurors in making their challenges.

For the errors heretofore pointed out this case will be reversed and remanded.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.