**MUTUAL LIFE INS. CO. OF NEW YORK v. PARKINSON.**

No. 5166.

Circuit Court of Appeals, Third Circuit.

Aug. 31, 1934.

Arthur G. Dickson, of Philadelphia, Pa. (Frederick L. Allen, of New York City, of counsel), for appellant.

Henry G. Sweney, of Chester, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an action in assumpsit to recover the face value of a policy of insurance on the life of William S. Parkinson, who died on February 17, 1931, as the result of a tumor on his brain.

The suit was tried to the District Court and a jury. The plaintiff, the beneficiary of the policy, introduced in evidence the policy, which was issued on October 20, 1930, after the usual examination by a physician, representing the insurer, the defendant. The plaintiff showed that the first premium was paid and furnished proofs of the death of the insured and then rested.

The defendant relied on a provision of the contract providing that: "The proposed policy shall not take effect unless and until delivered to and received by the Insured, the Beneficiary or by the person who herein agrees to pay the premiums, during the Insured's continuance in good health and unless and until the first premium shall have been paid during the Insured's continuance in good health; except in case a conditional receipt shall have been issued as hereinafter provided."

It sought to prove that the insured was not in good health on the date of the delivery of the policy and the payment of the first premium, November 21, 1930, but was suffering from melanotic sarcoma with metastasis. The plaintiff offered evidence in rebuttal that the insured was in good health. The jury brought in a verdict for the plaintiff, and after denying a motion for a new trial, the court entered judgment on the verdict.

The defendant's evidence tends to show that the insured had been in good health prior to the time the policy was issued. During the summer of 1930, he removed a mole from his neck, after cutting it with a razor when shaving, by using arsenic paste. The medical examination by the defendant's physician on October 8, 1930, tended to show that the insured was in good health. On January 21, 1931, the insured was admitted to a hospital for examination. At that time, he had another mole, which was pigmented, removed for laboratory tests and the case was diagnosed as melanotic sarcoma with metastasis—a malignant type of cancer that is manifested by the growth of tumors and moles throughout the body.

The insured stated as the history of his case that he was bothered by numerous moles and that his "illness" had begun approximately three months before that time; that it began when he had a large pigmented mole removed from his shoulder; that a week after this operation, a new, dome-shaped mole appeared on his right forearm, then other moles began to appear on his face, chest, back, and scalp; that about two and one-half months before this history was taken, he noted a swelling under his right ear and that this has become progressively worse; and he was nauseated after meals and had a loss of appetite.

There is expert testimony that it would hardly be possible for the insured's disease to have progressed so rapidly in the short period between the delivery of the policy or the payment of the premium and January 21, 1931; although the medical profession has been unable to determine the cause for and duration of cancer. An expert also testified that the use of arsenic paste in removing a mole was a likely cause of insured's condition becoming malignant, and that if the insured's physicians had not advised him of the danger of spreading and pigmented moles, they should have so advised him.

In rebuttal the plaintiff, the wife of the insured, testified that the tumors, not moles, began to appear on the insured during December, 1930, but not before that time; that on December 2, 1930, the insured underwent an operation for the removal of a mole or tumor; that in less than two months prior to that time, he had had another operation; that the insured was always in good health.

The insured's daughter and a clerk who assisted him in his business testified as to the insured's good health.

The defendant assigns as error the refusal of the trial judge to give binding instructions to the jury that under all the evidence its verdict should be for the defendant. Under this assignment of error the defendant contends that the ultimate burden of proving that the insured was in good health at the time of the delivery of the policy and the payment of the premium was on the plaintiff and that under the evidence there was no question for the jury as to the condition of the insured's health on November 21, 1930.

The assignment raises only the question whether or not the issue of good health should have been taken from the jury. It does not properly include the question of the burden of proof. Obviously, the assignment has a remote connection with the specific question of the burden of proof.

Rule 11 of this court provides that when each error is not assigned particularly and separately, counsel will not be heard, except at the request of the court, and errors not assigned according to the rule will be disregarded.

While the rule provides that this court, at its option, may notice an error not assigned, it will only do so when plain error, the correction of which is necessary to the administration of justice, appears in the record. Baltimore & Ohio R. Co. v. McCune, 174 F. 991 (C. C. A. 3); Columbia Heights Realty Company v. Rudolph, 217 U. S. 547, 30 S. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854. We have examined the record without finding such error as the rule contemplates.

Regardless of our own belief as to the insured's condition of health on November 21, 1930, there is evidence that warranted the submission of the question to the jury. The defendant did not establish as a matter of law that the insured was suffering from melanotic sarcoma on November 21, 1930. The defendant's proof merely shows that it may have existed; and, on the contrary, the plaintiff, her daughter, and the insured's business assistant testified to facts from which the opposite inference may be drawn and which will support the verdict of the jury.

The evidence of the medical experts and the statements of the insured in his medical history given on January 21, 1931, however suggestive they may be of ill health, establish simply that the insured had the cancerous condition on January 21, 1931; that it was in an advanced stage; that the insured had had numerous moles, one of which was pigmented. The medical experts declined to state the cause or the duration of the insured's disease. It might have been caused by the use of the arsenic paste in the summer of 1930, but it could have been induced later by something else. Admittedly this type of cancer can have a duration of from five weeks to ten years.

While the insured had moles removed from his body in October and December, 1930, it is not established that even if they were pigmented they indicated conclusively that the insured at that time had cancer. Moles appear frequently and may be removed by several methods without dangerous results.

Finally, the defendant contends that it is entitled to a new trial on the ground of the discovery of material evidence after the trial of the case. The affidavit containing the evidence on which the defendant relies suggests no new evidence that with due diligence could not have been brought out at the trial of the case, and if the learned trial judge had granted a new trial on this ground, it would merely have resulted in giving the defendant another day in court. Sun Life Assurance Company v. Budzinski, 25 F.(2d) 77 (C. C. A. 3).

The judgment is affirmed.