## BASS v. DEHNER.

### No. 1730.

Circuit Court of Appeals, Tenth Circuit.

Feb. 14, 1939.

Rehearing Denied May 1, 1939.

H. A. Kiker, Manuel A. Sanchez, and Anthony J. Albert, all of Santa Fe, N. M., for appellant.

Carl H. Gilbert, of Santa Fe, N. M. (M. W. Hamilton, of Santa Fe, N. M., and William T. Wolvington and Kenneth M. Wormwood, both of Denver, Colo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

This action was commenced by Mrs. Jane Bass, administratrix of the estate of Clarence R. Bass, deceased (intestate), in the District Court of Colfax County, New Mexico, to recover damages from T. P. Detamore, of Denver, Colorado, under the Death by Wrongful Act statute of New Mexico. Comp.St.N.M.1929, § 36-101 et seq.

The parties will be referred to in the order in which they appeared in the trial court.

The action in due course was removed by the defendant to the United States District Court for the District of New Mexico. Thereafter, said Detamore died, and his executrix, Mabel A. Dehner, was substituted as party defendant.

The cause was tried to a jury and a verdict returned in favor of plaintiff assessing her damages at $500, plaintiff filing a motion to have the verdict set aside and a new trial granted on the ground that the award for damages was grossly inadequate. The motion having been granted, the cause was again submitted to a jury, and a verdict on the issues in favor of the defendant was returned. Judgment having been entered thereon, plaintiff prosecuted this appeal.

The complaint is in two counts. The first charged that on December 6, 1936, Clarence R. Bass was driving his Ford coupe along Highway 85 northward near and toward the city of Raton, New Mexico; that the highway at said place was straight and free from obstructions to vision for more than 500 feet in both directions; that he was driving his car close to the right side of said highway; that testate Detamore, traveling in the opposite direction (south) in a Pontiac automobile carelessly, recklessly and negligently drove such automobile to the left of the center of the highway and into and against the left-side of intestate's Ford, causing the car of the said intestate to turn over several times; that as a proximate result thereof intestate was thrown from his automobile and received a fatal brain injury from which he died, damages being prayed for in the amount of $25,000.

The second cause of action as pleaded was identical with the first, but further alleged damages to intestate's Ford in the sum of $500 and for medical attention and hospital bills in the sum of $250.

Defendant in her amended answer denied all material allegations in the first and second counts, and set up a second, third, fourth and fifth defense.

The second and fifth defenses were stricken in their entirety together with a portion of the fourth, leaving the third and fourth defenses identical in substance. The third defense alleged that just prior to and continuing up to the time of the collision between the two automobiles, Clarence R. Bass was driving and operating his automobile in a northerly direction along said highway at a high, dangerous, reckless and negligent rate of speed, greatly in excess of such speed as was consistent with safety and proper use of said highway, and that such negligence contributed to and was a contributing cause of the collision, and contributed to and was a contributing cause of the death of Clarence R. Bass and the damages caused to his automobile.

The evidence material and pertinent to the issues presented is substantially as follows:

By T. Martinez that about 2:15 P. M., December 6, 1936, he was on the east side

of the junk yard of J. Redosovich near Raton and saw two cars wrecked in front of said yard which is on the west side of the highway running north and south to and from Raton; that a Pontiac car was traveling south and a Ford coupe north, the two cars coming together on the east side of the highway, a little bit north of the driveway that leads out from the garage, the driveway leading into the road from the junk yard. The Pontiac car struck the Ford car on the left back wheel. When the Ford car was struck by the Pontiac, the Ford went off the road, then gave a turn and went on the road again and commenced to roll over and over, the Ford rolling over about five times and laid on one side when it stopped. The engine of the Ford when it stopped rolling was to the northwest, and the car's rear end to the southeast. When the car stopped on its side part was on the road and the remainder off the pavement. When the car rolled over the first time it cracked open, and on the second turn it left its driver lying in the road. After the Pontiac hit the Ford, the Pontiac turned near the pavement, went to the other side, and when it straightened up, stopped, the Pontiac going over to the east side, then turned to the southwest to the end or edge of the pavement. The Pontiac car stopped just a little outside of the pavement after the two cars collided and Dr. Bass went out of the Ford car. I went down to where he was. I had known him since 1906. Doctor Bass was taken away from the scene of the accident in a truck. I helped to move the Bass car off the highway and then went up to where the Pontiac car was and talked to the man in charge of that car. He took my name and address. No one representing the defendant in this case ever talked to me about the case after that day. The road leads north to Raton. A road leads out of the junk yard to the highway. About the time I went to the Pontiac or after I had been there, I looked around the east side of the road where the collision occurred and saw where the Pontiac struck the Ford and threw it out of the road and that it dragged the wheels and made a mark and pushed the gravel a little. Where the Ford car came back on the pavement it made a mark on the pavement and the mark was about three feet before it started to go into the pavement. The track in the borrow pit or ditch was a curved line. When the cars struck I was in the driveway between the garage and the little house. I was about 15 feet from the west

of the little house. The garage building is west of the little house.

By D. Smith that on the afternoon of December 6, 1936, he and C. Coplin were standing on the roadway about a mile out of Raton, to hitchhike their way to California, being between the Rainbow View Camp and the junk yard; that he saw a collision between a Ford and a Pontiac, the collision happening well over on the east side of the road; that the Ford swerved into the borrow pit on the east side of the road, came back out and rolled over and over. (The east side of the road was the right side of the road to Doctor Bass who was traveling north, and the left side of the road to Detamore who was traveling south, said west side being the right side of the road to Detamore in traveling south.)

By C. Coplin, who was with Smith, that the Pontiac, going south, passed them about halfway between the Rainbow View Camp and the junk yard, and that he flagged it, but it did not stop; that a little later he saw the Ford coming north over the top of the hill and the two cars come together well over on the east side of the center line of the highway; that after the cars collided the Ford went down into the borrow pit, came up on a sharp angle and start rolling on the pavement; that they went to the Ford car and saw a man lying on the pavement and heard some one call him Doctor Bass.

On cross-examination he stated that when the Pontiac passed him it was traveling close to the middle of the highway; that when he flagged it, it naturally pulled out a little, and he did not see it get over on the left side of the road up to the time of the collision.

He also stated that the Bass car must have rolled about 600 feet before it came to a stop.

By O. A. Lamborn, a surveyor, that he made a plat of the road and the general topography of the country; that the road is an oiled mat of surface road; that the pavement is 20 feet wide with 3-foot gravel shoulders on each side; that the distance from the top of the hill south of the junk yard to the driveway leading into the junk yard is 1,781 feet, and the distance from the junk yard to the Rainbow View Camp is 1,100 feet, and that there is a clear view all the way; that the grade is approximately 4.2 per cent, which levels out to a .7 inch fall per hundred feet for a way and

then to a 1.25 per cent grade on by the Rainbow View Camp.

Other witnesses were produced, who had not seen the actual collision, to corroborate the testimony of plaintiff's witnesses.

By John Musilli, for defendant, that he saw a wreck in the vicinity of the junk yard on the afternoon of December 6, 1936, and at time the cars collided he was about 15 or 20 feet from the junk yard; that he heard the Ford, making a lot of noise, coming over the hill, and that he would judge that it was going from 70 to 75 miles an hour; that when he first saw it it was in the middle of the highway, coming very rapidly; that it seemed as though it went off the road into the ditch, came back on the road, and swerved, and about that time hit the Pontiac; that the hind wheel might have been caught in the rainwater there, and then "it went on the road in·a very sharp turn, went into the Detamore, the car skidded about sixty feet up the road and rolled over five times down the road; it might have gotten into a rut made by the rain water. Before the car turned sharply to the left, and ran into the Detamore car, the outside wheels of the Bass car were off the oiled pavement." That it looked like it made a bad jump and when it got back on the road it sort of swung around and hit the Detamore car's side of the road, a sort of a glancing blow, then went off the road to the right into the borrow pit, came back out of the borrow pit on to the highway and started to roll, and made a big cloud of dust as it rolled down the east side of the highway; that after the collision the Pontiac swung in toward the center of the road as though being pulled in by some force, and then pulled off to its own side; that the Pontiac was going about 35 to 40 miles an hour.

By Mabel A. Dehner, the defendant, that she was the sister of Detamore; that she and he were on their way from Denver, Colorado to Las Vegas, New Mexico, and that her brother was driving slowly in order to avoid shaking her up as she had recently had an operation; that on the sixth of December, they were driving along the highway in a southerly direction just south of Raton when the collision occurred between their Pontiac and the car driven by Doctor Bass; that shortly before the collision she saw the Bass car coming over the hill traveling at a rapid rate; a little left of the center of the road; that her brother slowed down a little and pulled to the right; that this other car came down the highway, and just a second or two before he got to them, pulled to the right, but never slowed up, and then made a sharp turn, and "it appeared to me like he lost control of his car and he struck the hub of our car, the left wheel, the left front wheel, mashed the fender, and it seemed like he sideswiped too"; that the tire of the Pontiac went down and it pulled them a little bit into the center of the road, and then the car straightened out. That it appeared that the Bass car was approaching at a high rate of speed, she would say 70 to 75 miles an hour; that at the time of the collision they were on the right hand side of the highway, traveling south.

At the close of the evidence, counsel for plaintiff requested the court to withdraw from the consideration of the jury any issue upon the question of contributory negligence on the ground that the evidence clearly disclosed that the wreck in question occurred either on the east side of the road due to the negligence of Detamore, or on the west side due to the sole negligence of Bass, and that the plea of contributory negligence places the burden upon the defendant to show that the negligence of the plaintiff concurred with his (defendant's) own negligence to produce the result, and that all the testimony of the defendant has denied negligence of any character whatever on Detamore's part, and that where it is a question of whether the wreck occurred on either one side of the road or the other, the question of speed becomes wholly immaterial. The court denied such motion, and plaintiff duly excepted. The court thereupon in its charge instructed the jury as to the question of contributory negligence, and submitted to the jury three interrogatories, with answers, as follows:

"(1) Q. Which side of the road did the collision occur on, on the East side or the West side of the center of the road? A. West.

"(2) Q. At the time of the accident complained of was Clarence R. Bass driving his automobile at an excessive rate of speed inconsistent with safety and the proper use of the highway? A. Yes.

(If your answer to the above question is yes.)

"(3) Q. Did such excessive speed contribute in any degree to the accident? A. Yes."

In its verdict it found generally against the plaintiff on both causes of action.

Plaintiff contends that the court erred in overruling its motion at the close of all the evidence, in submitting instructions, to take away from the jury the question of contributory negligence. It is argued that all of the evidence offered by defendant sought to show that the accident was caused by Doctor Bass driving his car across the center line of the highway and into the automobile of Detamore, and denied any negligence upon the part of Detamore, and that the evidence of plaintiff was to the effect that the accident happened on Doctor Bass' side of the road and that if the accident happened as contended by the defendant it was the result of the sole negligence of Doctor Bass, and that if it happened as contended by the plaintiff it was the result of the sole negligence of Detamore, and that the speed at which Doctor Bass was driving could not be a contributing cause to the accident.

■ The defendant in her answer as a first defense denied negligence on the part of Detamore. In her third and fourth defenses, which were identical, she pleaded contributory negligence upon the part of Doctor Bass. On part of defendant, the evidence tended to show that Bass was driving at a high rate of speed; that shortly before the collision something occurred which caused him apparently to lose control of his car and turn over to Detamore's side of the road, at which time the collision occurred. The evidence of plaintiff was to the effect that Detamore was driving his car on the wrong side of the road. There is evidence not only that Detamore was negligent but also that Doctor Bass was negligent. The jury was justified in believing from the evidence of plaintiff that Detamore was driving on the wrong side of the road when the collision occurred, and at the same time believing that part of the evidence of the defendant that Bass was driving at such an excessive rate

of speed that a rut on the side of the road, or a pool of water, caused him to lose control of his car and as a consequence thereof his car crashed into the Detamore car, which negligence concurred in the negligence of Detamore, and contributed to the accident. The motion to withdraw the question of contributory negligence was properly denied.

In Jackson v. Miller, 130 Cal.App. 427, 20 P.2d 113, 114, relied on by plaintiff, a head-on collision occurred, the question being on which side of the road. The plaintiff's evidence was to the effect that it occurred on defendant's side and defendant's evidence that it occurred on plaintiff's side, there being no evidence as to excessive speed or other negligence.

In that case the court said: "We are not convinced from the record that appellant was entitled to have any instructions given on the subject of contributory negligence, inasmuch as there is no evidence to support such a defense."

In Burlie v. Stephens, 113 Wash. 182, 193 P. 684, there was no testimony tending to show that the speed of the automobile had anything to do with the collision. The court held that where it appeared that the collision would have occurred regardless of the speed at which the automobile was traveling, an instruction directing the jury to disregard the matter of speed was proper.

The court with the consent of all parties permitted the jury to take the written instructions as given, photographs and such exhibits with them to the jury room, cautioning the jury that they were to consider the instructions as a whole, and so apply the evidence and not to single out any one particular instruction to the exclusion of others, and to consider the instructions given in writing which they were permitted to take to the jury room in connection with all the instructions given by the court.

The instructions applicable to the questions raised are set out under footnote 1.[1]

---

[1] The court instructed the jury that: "* * * this is an action for negligence, and negligence is defined to be a failure to do what an ordinarily prudent person would have done under the circumstances, or the doing of that which an ordinarily prudent person would not have done under the circumstances.

"* * * the standard of care and diligence required by law of both the plaintiff and the defendant is the same. It is ordinary care and diligence, and that care and diligence is the care and diligence

which every prudent man takes of himself, his property, and which he extends, and is required to extend or accord, to other persons and their property, or that care and diligence which every prudent man would exercise under similar circumstances and like surroundings. The absence of such care and diligence is negligence. * * *

(5) "Before the plaintiff can recover * * * she must establish by a preponderance of the evidence in this case * * * to your reasonable satisfaction,

The findings under the submitted interrogatories were made on conflicting evidence, that the accident occurred on the west side of the road, and if permitted to

the truth of the several material allegations * * * denied by the defendant. If the plaintiff has so established the truth of said material allegations, then plaintiff is entitled to recover in some amount, not to exceed the amount claimed in the complaint, unless she cannot recover under the instructions hereinafter given you as to contributory negligence. * * *

(7) " * * * the proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces the injury without which the result would not have occurred. It is the efficient cause. No negligence is actionable unless such negligence is the proximate cause of the injury complained of.

(8) "One of the defenses in this case is, that just prior to, and at the time of the collision between the two automobiles, Clarence R. Bass was driving his automobile at a high, dangerous, reckless and negligent rate of speed greatly in excess of such speed as was consistent with safety and proper use of the highway, and that his negligence in so doing was a contributing cause of the accident.

"The laws of this State in force at the time of this accident required automobiles of the type here involved to be operated at such speeds as were consistent at all times with safety and the proper use of the highways, and the operation of such an automobile over the highways of this State in excess of such a speed would constitute negligence as a matter of law.

"If you find from a preponderance of the evidence that just prior to and at the time of the accident, Clarence R. Bass was negligent in driving his automobile at a high and dangerous rate of speed inconsistent with safety and the proper use of the road, and that such negligence contributed to the accident in any degree, your verdict should be for the defendant even though you also find that T. P. Detamore was driving his automobile at the time of the accident on the wrong side of the road.

(10) "It is unnecessary to a recovery by plaintiff that there be proof that T. P. Detamore was driving at a high, dangerous, reckless and negligent rate of speed at the time of the collision, for it is sufficient for a recovery by the plaintiff that you be convinced by a preponderance of the evidence, if you are so convinced, that said T. P. Detamore negligently drove his car at any rate of speed across to the left of the center line of the highway and into the car of said Clarence R. Bass, and

thereby proximately and directly caused the injury to the car then being driven by said Clarence R. Bass, and the injuries resulting in the death of the said Clarence R. Bass, provided, the said Clarence R. Bass was not guilty of negligence proximately and directly contributing to the collision and his resultant injuries."

(11) " * * * that the rule to be observed by the driver of an automobile when he approaches another automobile coming from the opposite direction on a public highway in this State, in order that the automobiles may pass each other in safety, is prescribed by statute as follows:

" 'Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other at least one-half of the main traveled portion of the roadway, as nearly as possible.'

"The driver of each automobile, who is himself observing this rule, has a right, ordinarily, to assume that the driver of the other automobile will also observe the rule, and thus avoid a collision between the two automobiles when they meet each other. Neither is under a duty to the other to anticipate a violation of the rule by him.

"When the driver of one of the automobiles is not observing the rule, as the automobiles approach each other, the other may assume that before the automobiles meet, the driver of the approaching automobile will turn to his right, so that the two automobiles may pass each other in safety. One is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care, and in this case, plaintiff's intestate, if traveling on his own side of the road, had a right to expect defendant's intestate to travel on his own side of the road, and to return thereto if he had departed therefrom, until such time as he, the said Clarence R. Bass, knew, or should have known, if he did, that defendant's intestate would not keep to his own side of the road.

(19) "If you find that the evidence is as consistent with the neglect of duty or care on the part of Clarence R. Bass as it is with that on the part of T. P. Detamore, your verdict should be for the defendant, and if you are unable to determine from the evidence whose negligence caused the collision your verdict should be for the defendant."

stand absolved defendant's testate from negligence. The complaint makes no charge of negligence against him, other than that he crossed over from the west side of the road to its east side and drove his car into the Bass car.

■ Where special findings by the jury show that plaintiff's intestate was not injured by an instruction, error therein is without prejudice.

In Corcoran v. Albuquerque Traction Co., 15 N.M. 9, 103 P. 645, 647, it is said: "The instruction, however, authorizes a verdict for appellee in case of injury caused either by the starting of the car or by the defective step and riser. In this it was clearly erroneous, but the question remains whether it was a harmless error. The jury, in addition to the general verdict, made a special finding of fact that the car which appellee attempted to board moved while she was in the act of boarding it, and before she fell upon the platform. They thus clearly showed that they found their verdict upon the issues presented by the pleadings and supported by the proofs, and were in no way mislead by the erroneous instruction. * * * The error, if it was an error, was a harmless one, and appellant cannot complain." See, also, 5 C.J.S., Appeal and Error, § 1773-c, p. 1153.

Defendant's contention is that the jury's answer to the first interrogatory being in effect that its testate was free of all negligence, and that the answers to the second and third interrogatories, considered in connection with that of the first, show that the negligence of plaintiff's intestate contributed in some degree at least to the collision, and that the jury in said answers did not find any concurring negligence on the part of Detamore.

■ As to the claim of conflict between the jury's special finding and the general verdict, in Thayer v. D. & R. G. R. Co., 25 N.M. 559, 185 P. 542, 544, it is stated: "It is well settled that special findings of a jury will not justify the setting aside of a general verdict, unless such findings are in irreconcilable conflict with the general verdict." See, also, Smith v. A., T. & S. F. Ry Co., 19 N.M. 247, 142 P. 150.

■ In Pettes v. Jones, 41 N.M. 167, 66 P.2d 967, 968, it is said: "We must determine whether the special findings are inconsistent with the general verdict. If so,

the former shall control the latter. 'Trial Court Rules,' § 70-103. However, before declaring a conflict, an effort should be made to reconcile apparent inconsistency. In order to prevail, the special finding should clearly exclude every reasonable conclusion that would authorize the general verdict."

In New Mexico there appears to be no announced test to be applied in determining as to special findings being inconsistent with each other.

In 64 C.J. § 964, p. 1176, it is stated: "Presumptions and intendments will not be indulged to establish a contradiction, it being the duty of the court to reconcile or harmonize the special findings or answers to special interrogatories with each other, if it can reasonably be done."

In House v. Wichita Gas Co., 137 Kan. 332, 20 P.2d 479, 482, it is held: "If there was any inconsistency in the answers, it was the duty of the lower court to harmonize them, if possible, and it is likewise our duty so to do." See, also, Raughtigan v. Norwich Nickel & Brass Co., 86 Conn. 281, 85 A. 517; Alhambra Addition Water Co. v. Richardson, 72 Cal. 598, 14 P. 379; Connor v. Fleming Bros. Lumber & Mfg. Co., 197 N.C. 66, 147 S.E. 672; Allen v. Yarborough, 201 N.C. 568, 160 S.E. 833; Union Pac. Ry. Co. v. Fray, 43 Kan. 750, 23 P. 1039; Greiner v. Greiner, 129 Kan. 435, 283 P. 651; State v. Hanna, 87 Wash. 29, 151 P. 83, 1087, and Stern v. Benbow, 151 N.C. 460, 66 S.E. 445.

■ A general denial and plea of contributory negligence do not constitute inconsistent defenses, and may be pleaded in the same answer, provided they are set out as distinct and separate pleas. Sandoval v. A., T. & S. F. Ry. Co., 30 N.M. 343, 233 P. 840; 45 C.J. 1118, § 696; 20 R.C. L., § 150, p. 181.

In Raymond v. Kaiser et al., Minn., 283 N.W. 119, 120, it is said: "It is not deemed that any good purpose would be served by giving further details of this collision or the surrounding circumstances. That because of conditions plaintiff's car, against his will and in spite of his efforts, landed upon the wrong side of the pavement is not conclusive proof of his negligence or contributory negligence." See, also, Woody v. Utah Power & Light Co., 10th Cir., 54 F.2d 220; 2 Blashfield, Cyc. of Automobile Law and Practice, Permanent Edition, § 897, p. 41; 10 Blashfield,

Cyc. of Automobile Law and Practice, Permanent Edition, § 6631, p. 392.

■ The contention is that instruction No. 8 is erroneous for the reason that it submitted to the jury for determination the question of excessive speed, without informing it as to what should be taken into consideration in such determination.

The court advised the jury that negligence is a failure to do what an ordinarily prudent person would have done, or the doing of that which an ordinarily prudent person would not have done under the circumstances, and that the standard of care and diligence required of the plaintiff and the defendant was the same, which is ordinary care and diligence, and that care and diligence is the care and diligence which every prudent man takes of himself and his property, and which he extends or which he is required to extend to other persons and their property, or that care and diligence which every prudent man would exercise under similar circumstances and surroundings, the absence of such care and diligence being negligence.

The further contention is that Instruction No. 8 did not require that negligence on the part of plaintiff's intestate should proximately contribute to the collision to bar recovery.

Instruction No. 7 is "that the proximate cause of an injury is that cause which in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury without which the result would not have occurred. It is the efficient cause. No negligence is actionable unless such negligence is the proximate cause of the injury complained of."

These two objections are obviated in the light of instructions 1 and 7.

■ The further contention is made that the court erred in instruction No. 8, when it told the jury that if they found from a preponderance of the evidence that Bass's negligence contributed to the accident in any degree their verdict must be for the defendant.

This instruction is supported by Pettes v. Jones, supra, 41 N.M. 167, 66 P.2d 967. See, also, Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291.

■ Instruction No. 19 is assailed on ground that (1) it permits the jury to find for defendant though the negligence of Bass did not contribute proximately to the occurrence of the accident. Considered in connection with instruction No. 7, same appears to be without merit. The further contention (2) is that it relieves the defendant of the burden of providing contributory negligence when it says, "If you find that the evidence is as consistent with the neglect of duty or care on the part of Clarence R. Bass as it is with that on the part of T. P. Detamore your verdict should be for the defendant."

■ Contributory negligence being pleaded, burden was on the defendant to prove same. If there had been no question of contributory negligence submitted to the jury this instruction would not be subject to criticism on this ground, but when we consider the general verdict in favor of the defendant as well as the answers to the three interrogatories submitted, though it may be assumed to have constituted error, yet it affirmatively appears to have been without injury.

The jury as to each cause of action found "against the plaintiff, Jane Bass, administratrix of the estate of Clarence R. Bass, deceased," and also by the special interrogatories found that the collision occurred on the west side of the center of the road, which was on Detamore's side of the road, and that "Clarence R. Bass was driving his automobile at an excessive rate of speed inconsistent with safety and the proper use of the highway." There was, under these findings, no negligence on part of Detamore, and, therefore, no concurring negligence.

The court also instructed the jury that if they found by a preponderance of the evidence that "just prior to and at time of the accident Clarence R. Bass was negligent in driving his automobile at a high and dangerous rate of speed inconsistent with safety and the proper use of the road, and that such negligence contributed to the accident in any degree, your verdict should be for the defendant, even though you also find that T. P. Detamore was driving his automobile at the time of the accident on the wrong side of the road."

■ We have carefully examined and considered the evidence, and there being substantial conflict we may not weigh same. All instructions and answers to interrogatories, in the light of all the evidence, disclose no reversible error.

All members of the jury panel being absent from the court room, the attorney for plaintiff requested the court "to call upon

Counsel for Defendant to state whether or not there is an Insurance Company having written a policy of public liability protecting T. P. Detamore from damages resulting from the collision? If there is such a Company holding a policy, to state the name of that company, so that the Court may, or may permit Counsel for the purpose of challenging for cause, and for the proper exercise of peremptory challenges, to examine the jury."

This request was denied by the court and exceptions saved.

■ The general rule sustains the right of counsel for plaintiff in a personal injury case so long as acting in good faith for the purpose of ascertaining the qualifications of jurors to interrogate prospective jurors with respect to their interest in or connection with indemnity insurance companies apparently interested in the result of the case, but not to interrogate defendant's counsel, either at the bar or as a witness, as to whether an insurance company is interested in the case, for the purpose of obtaining a basis for interrogating the jurors as to their connection, if any, with such insurance company. Bartolas v. Coleman, 27 Ohio App. 119, 161 N.E. 20; Chybowski v. Bucyrus Co., 127 Wis. 332, 106 N.W. 833, 7 L.R.A.,N.S., 357; Wagner Electric Corp. v. Snowden, 8 Cir., 38 F.2d 599; Pickwick Stage Lines v. Edwards, 10th Cir., 64 F.2d 758; Stewart v. Brune, 8 Cir., 179 F. 350; Brown v. Miller, 52 App.D.C. 330, 286 F. 994; In re Marron, 22 N.M. 252, 160 P. 391, L.R.A.1917B, 378; 35 C.J. § 439, p. 395.

The only question raised in the trial court in the absence of the entire panel from the court room was that such disclosures be ordered, the assignment of errors resting solely upon the refusal of the court to require such disclosures. The record does not disclose that in qualifying the jurors in the jury box that the matter was further pursued by inquiry as to whether any of the jurors were interested in any way, directly or indirectly, in any insurance company.[2]

The question of possible insurance covering defendant's car under the laws of New Mexico appears in no way to have been pertinent to any issue in the case.

From the record no motion was made for leave to interrogate any of the jurors in the box as to such matter at any time.

■ A stipulation in the record shows that the trial court examined the jurors generally as to their qualifications, such examination so conducted, however, not being brought up in the record, other than that no direct question as to possible insurance company affiliations was asked the jurors, and were questioned as to their occupations and general qualifications. The general rule is that the course and extent of voir dire examination is largely within the discretion of the trial court. Connors v. United States, 158 U.S. 408, 15 S.Ct. 951, 39 L. Ed. 1033. See, also, Fulcher v. Pine Lumber Co., 191 N.C. 408, 132 S.E. 9.

In Bailey v. United States, 5 Cir., 53 F.2d 982, 984, it is stated: "It is not to be understood that the court was required to ask any of the additional questions suggested in the form in which they were submitted, or to treat the request made in that regard as having further effect than to invoke the exercise by the court of its power to do what was reasonably practicable to enable the accused to have the benefit of the right of peremptory challenge or to prevent unfairness in the trial."[3]

The judgment is affirmed.

[2] Harris v. Newsom, 8 Cir., 23 F.2d 652; Carpenter v. Connecticut General Life Ins. Co., 10 Cir., 68 F.2d 69; Najera v. Bombardieri, 10 Cir., 46 F.2d 281; Southern Kansas Stage Lines v. Gibson, 10 Cir., 87 F.2d 23; Mutual Life Ins. Co. v. Parkinson, 3 Cir., 72 F.2d 759; F. W. Woolworth Co. v. Davis, 10 Cir., 41 F.2d 342; Pickwick Stage Lines v. Edwards, 10 Cir., 64 F.2d 758.

[3] Indemnity Insurance Co. of North America v. Forrest, 9 Cir., 44 F.2d 465; Connors v. U. S., 158 U.S. 408, 15 S.Ct. 951, 39 L.Ed. 1033; Southern P. Co. v. Rauh, 9 Cir., 49 F. 696; Herrin v. Daly,

80 Miss. 340, 31 So. 790, 92 Am.St.Rep. 605; Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552; Gordon Jones Construction Co. v. Lopez, Tex.Civ.App., 172 S.W. 987; Hoagland v. Chestnut Farms Dairy, 63 App.D.C. 357, 72 F.2d 729; Territory v. Lynch, 18 N.M. 15, 133 P. 405; New Ætna Portland Cement Co. v. Hatt, 6 Cir., 231 F. 611; Netter v. Caldwell, 173 Ky. 200, 190 S.W. 721; Hoagland v. Dolan, 259 Ky. 1, 81 S.W.2d 869; Ryan v. Simeons, 209 Iowa 1090, 229 N. W. 667; Burrows v. Likes, 180 Mo.App. 447, 166 S.W. 643; F. W. Woolworth v. Davis, 10 Cir., 41 F.2d 342.